# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTOPHER EARL STRUNK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-CV-02234 (RJL) |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the federal Rules of Civil Procedure, Defendants, the U.S. Department of State and the U.S. Department of Homeland Security respectfully move for summary judgment.

By this Freedom of Information Act ("FOIA") action, *pro se* Plaintiff Christopher Strunk seeks passport and travel records relating to President Barack Obama and his mother, Stanley Ann Dunham, from Defendants. The Court has previously dismissed all claims relating to records concerning the President, leaving only the requests for records concerning Ms. Dunham at issue. March 16, 2010 Order [Dkt. #31]. Defendants have now completed processing of these requests and have released documents to Plaintiff, subject to appropriate withholdings under FOIA. Accordingly, because Defendants have appropriately responded to Plaintiff's requests, and because there are no genuine issues in dispute, Defendants are entitled to judgment in their favor as a matter of law. The reasons supporting this motion are set forth in the accompanying memorandum in support. A statement of material facts as to which there is no genuine issue and a proposed order are also attached for the Court's consideration.

Dated: July 29, 2010

Respectfully submitted,

TONY WEST
Assistant Attorney General

RONALD C. MACHEN, JR.
United States Attorney

ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
Deputy Branch Director

_____*s/ Brigham J. Bowen*_____
BRIGHAM J. BOWEN (D.C. Bar No. 981555)
Civil Division, U.S. Department of Justice
Federal Programs Branch
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Ph.     (202) 514-6289
Fax     (202) 616-8470
brigham.bowen@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 29th day of July, 2010, I caused a true and correct copy of the foregoing motion to be served upon Plaintiff by first class United States mail, postage prepaid marked for delivery to:

**Christopher E. Strunk**
**593 Vanderbilt Ave., #281**
**Brooklyn, NY 11238**

_s/ Brigham J. Bowen_
Brigham J. Bowen

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTOPHER EARL STRUNK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-CV-02234 (RJL) |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

By this Freedom of Information Act ("FOIA") action, *pro se* Plaintiff Christopher Strunk

seeks passport and travel records relating to President Barack Obama and his mother, Stanley

Ann Dunham, from the Department of State ("State") and the Department of Homeland Security

("DHS"). The Court has previously dismissed all claims relating to records concerning the

President, leaving only the requests for records concerning Ms. Dunham at issue. *See* March 16,

2010 Order [Dkt. #31]. Defendants have now completed processing of these requests and have

released documents to Plaintiff, subject to appropriate withholdings under FOIA. Because

Defendants have appropriately responded to Plaintiff's requests, and because there are no

genuine issues in dispute, Defendants are entitled to summary judgment in their favor as a matter

of law.[1]

---

[1] Because Defendants have processed Plaintiff's requests, Plaintiff's motion to compel [Dkt. #35] should be denied as moot.

## BACKGROUND

Three FOIA requests submitted by Strunk are at issue in this litigation.  The first, sent to State in October 2008, requested "exit and entry records for travel outside of the USA for the period between 1960 through 1963" relating to Ms. Dunham.  Am. Compl. ¶ 12 & Ex. A (Oct. 16, 2008) (Galovich Decl. Ex. 1).  The second request, submitted a month later, sought additional records from State, including passport and travel records relating both to then-President-Elect Barack Obama and to Dunham.  Am. Compl. ¶ 17 & Ex. E (Nov. 22, 2008) (Galovich Decl. Ex. 3).  In his third request, Strunk sought the same information from U.S. Customs and Border Protection (a component of DHS; hereinafter "CBP") as he had previously sought from State: passport and travel records relating to Obama and Dunham.  Am. Compl. ¶ 22 & Ex. I (Dec. 25, 2008) (Pullo Decl. Ex. C).

Strunk then filed a Complaint against State on December 29, 2008.  A week later (and a mere ten days after Strunk sent his FOIA request to CBP), Strunk submitted to the Court an Amended Complaint, which added DHS as a Defendant.  Am. Compl.; *see also* Pl.'s Mot. for Recons. [Dkt. #10], Strunk Aff. ¶ 2.

Shortly after Strunk submitted his Amended Complaint to the Court (but before it was docketed),[2] State provided two responses to Strunk.  These responses (1) informed Strunk that entry and exit records are maintained not by State, but by CBP; (2) provided Strunk with contact information for that agency; and (3) informed Strunk that because Dunham is deceased, State would conduct a search for passport applications submitted by her, but that, pursuant to regulation, State would not search for records relating to Obama without submission of a privacy

---

[2] The Amended Complaint was filed on February 10, 2009.

waiver from Obama.  Galovich Decl. ¶¶ 5, 9-11 & Exs. 2, 5; *see also* 22 C.F.R. § 171.12(a)

(requiring FOIA requesters seeking third-party records to provide "written authorization for

access by the individual, notarized or made under penalty of perjury").

CBP responded to Strunk's third request on February 3, 2009.  Pullo Decl. ¶ 7 & Ex. A.

In this response, CBP informed Strunk that it would not release records relating to Obama

because DHS regulations (like the DOS regulations) require privacy waivers before third-party

records can be released. Pullo Decl. ¶ 8 & Ex. A; *see also* 6 C.F.R. §§ 5.3, 5.21(f).  In

conjunction with this response, CBP released to Strunk responsive entry/exit records relating to

Dunham.  Pullo Decl. Ex. A.

Defendants moved for partial dismissal on April 23, 2009, asking the Court to dismiss all

claims regarding records concerning the President, on grounds that Plaintiff had failed to comply

with agency regulations requiring privacy waivers before requesters may seek third-party

records.  The Court granted the motion on March 16, 2010.  Order [Dkt. #31].  After the Court's

Order, the remaining claims include (1) Strunk's request to State for passport records regarding

Ms. Dunham, and (2) Strunk's request to CBP for passport and travel records concerning Ms.

Dunham.  CBP released responsive records on February 3, 2009.  State released responsive

records on July 29, 2010.  Because each defendant has appropriately completed processing of

Plaintiff's FOIA requests, Defendants now request summary judgment in their favor.

## ARGUMENT

### I.      Statutory Background And Standard Of Review.

The FOIA, 5 U.S.C. § 552, generally mandates disclosure, upon request, of government

records held by an agency of the federal government except to the extent such records are

protected from disclosure by one of nine exemptions.  The "fundamental principle" that animates

the FOIA is "public access to Government documents." *John Doe Agency v. John Doe Corp.*,

493 U.S. 146, 151 (1989).  "The basic purpose of FOIA is to ensure an informed citizenry, vital

to the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

242 (1978).  At the same time, Congress recognized "that legitimate governmental and private

interests could be harmed by release of certain types of information and provided nine specific

exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621

(1982); *see also* 5 U.S.C. § 552(b).  While these exemptions are to be "narrowly construed,"

*Abramson*, 456 U.S. at 630, courts must not fail to give the exemptions "meaningful reach and

application," *John Doe Agency*, 493 U.S. at 152.  The FOIA thus "represents a balance struck by

Congress between the public's right to know and the government's legitimate interest in keeping

certain information confidential." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d

918, 925 (D.C. Cir. 2003).

Summary judgment is the procedure by which courts resolve nearly all FOIA actions.

"In order to obtain summary judgment the agency must show that it made a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C.

Cir. 1990).  "There is no requirement that an agency search every record system." *Id.*  "[T]he

issue to be resolved is not whether there might exist any other documents possibly responsive to

the request, but rather whether the <u>search</u> for those documents was <u>adequate</u>." *Weisberg v. U.S.

Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also Meeropol v. Meese*, 790 F.2d

942, 952–53 (D.C. Cir. 1986) ("A search is not unreasonable simply because it fails to produce all relevant material."); *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982).

In evaluating the adequacy of a search, courts accord agency affidavits "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). The statute does not require "meticulous documentation [of] the details of an epic search." *Perry*, 684 F.2d at 127. "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id.*

To sustain its burden of justifying nondisclosure of information, *see* 5 U.S.C. § 552(a)(4)(B), the agency must provide declarations that identify the information at issue and the bases for the exemptions claimed, *see Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Courts review de novo the agency's use of a FOIA exemption to withhold documents. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail ... and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf*, 473 F.3d at 374 (internal quotation marks omitted) (omission in original). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374–75.

## II.      State And CBP Conducted Adequate Searches For Responsive Documents.

Defendants' searches for records responsive to Plaintiff's requests were reasonably calculated to uncover all documents responsive to the requests.  As explained in the Declaration of Alex Galovich, the Acting Director of the Office of Information Programs and Services ("IPS") at State, IPS determined that the Office of Passport Services would be the only office that would reasonably be expected to maintain the records requested.  Galovich Decl ¶ 14.  That office "is charged with issuing passports to U.S. citizens, and issues some 15 million passports per year through 25 domestic agencies."  *Id.*  The Office of Passport Services maintains the Passport Information Electronic Records System ("PIERS"), "an electronic database that includes the records of some 144 million passports that have been issued from 1978 to the present."  *Id.*  State also maintains paper records of some passport applications.  *Id.*[3]

In response to Plaintiff's request for records concerning Ms. Dunham, Passport Services conducted numerous searches of PIERS using the names provided in Plaintiff's November 22, 2008 FOIA request, including DUNHAM, Stanley Ann; DUNHAM, Stanley Ann Obama; OBAMA, Stanley Ann; SOETORO, Stanley Ann; SOETORO, Stanley Ann Obama; and SUTORO, Stanley Ann Obama.  *Id.* ¶ 15.  Passport Services also used those names in conducting numerous searches of the paper records.  *Id.*  Six responsive passport records were

---

[3] As further explained in State's written response to Strunk's request, passport records "typically consist of applications for United States passports and supporting evidence of United States citizenship.  Passport records do not include evidence of travel such as entrance/exit stamps, visas, residence permits, etc., since this information is entered into the passport book after issuance."  Galovich Decl. Ex. 6 at 1.

located.  *Id.*[4]

CBP's search for responsive records included a search of the TECS electronic database system.  Pullo Decl. ¶ 6.  TECS is an overarching law enforcement information collection, analysis, and sharing environment.  TECS System of Records Notice, 73 FR 77778, 77779 (December 19, 2008).  TECS is comprised of several modules that collect, maintain and screen data, as well as conduct analysis, screening and information sharing.  *Id.*  TECS (previously known as the Treasury Enforcement Communications System) "began capturing traveler arrivals and departures into and out of the United States beginning in January of 1982."  Pullo Decl. ¶ 6. Prior to 1982, paper entry documents were used, but such documents no longer exist and are no longer archived by CBP.  *Id.*  Because the TECS database was the most likely system to have entry and exit data pertaining to Ms. Dunham, CBP searched that system and located one page of responsive records.  *Id.*

Each of these searches was "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.  CBP and State identified the systems likely to contain relevant documents, searched them, located responsive documents, and released them to Plaintiff.  The agency declarations demonstrate that the searches were adequate in scope and method, and summary judgment in this regard is therefore warranted.

### III.    CBP Properly Withheld Records Under Applicable FOIA Exemptions.

Defendants processed the responsive records in accordance with FOIA.  State made no

---

[4] One application for amendment of passport submitted by Ms. Dunham made reference to a 1965 passport application.  State was unable to locate this application and explained to Strunk that "[m]any passport applications and other non-vital records from that period were destroyed during the 1980's in accordance with guidance from the General Services Administration."  Galovich Decl. Ex. 6 at 1.

withholdings.  Galovich Decl. ¶ 16.  CBP withheld certain information pursuant to FOIA

exemptions 2 and 7(E), as explained in detail below and in the Declaration of Dorothy Pullo.

CBP properly invoked these exemptions and processed and released all reasonably segregable

information from the responsive records.

    **A.**    **CBP Processed And Released All Reasonably Segregable Information From The Responsive Records.**

As required by the FOIA, CBP has provided all "reasonably segregable" responsive

information that is not protected under a FOIA exemption.  5 U.S.C. § 552(b).  CBP processed

all documents to achieve maximum disclosure consistent with the access provisions of the FOIA,

and made every effort to provide plaintiff with all material in the public domain and with all

reasonably segregable portions of releasable material.  *See* Pullo Decl. ¶¶ 19-20.  No reasonably

segregable, nonexempt portions were withheld.  *Id.*  CBP indicated where any material was

withheld in the documents released to Plaintiff and provided coded categories to indicate the

nature of any information withheld.  *Id.*  All the material withheld is exempt from disclosure

pursuant to FOIA exemptions or is so intertwined with protected material that segregation is not

possible without revealing the underlying protected material.  *Id.*

    **B.**    **CBP Properly Withheld Material Related To Internal Personnel Rules And Practices Pursuant To Exemption 2.**

CBP properly withheld certain CBP internal information pursuant to FOIA Exemption 2.

Exemption 2 protects information "related solely to the internal personnel rules and practices of

an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies to materials "used for predominantly

internal purposes."  *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting *Crooker v.*

*Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc)).  This

exemption has been held to protect two types of information: (1) information the release of which would "risk[] circumvention of agency regulations or statutes," *Crooker*, 670 F.2d at 1074, and (2) "routine matters of merely internal interest," *id.* at 1069; *see also Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830 n.4 (D.C. Cir. 1983) (exemption applies to material that "relates to trivial administrative matters of no genuine public interest"); *Schiller*, 964 F.2d at 1207 (explaining "high 2" and "low 2" exemptions).

CBP withheld both "high 2" and "low 2" information.  The "low 2" information withheld consists of purely administrative markings such as record identification numbers, facsimile and phone numbers, and computer function codes that instruct computer system users on how to navigate their way through the system.  Pullo Decl. ¶ 11.  Such markings are used "for the purposes of indexing, storing, locating, retrieving and distributing information in the CBP databases."  *Id.* ¶ 12.  As stated in the Pullo Declaration, access to the file and computer systems searched here is restricted from the public; accordingly, public access to and knowledge of the internal computer system codes could facilitate improper access to sensitive CBP records and interfere with CBP's ability to maintain control of its information systems.  *Id.*  Courts have routinely upheld these kinds of withholdings.  *See*, *e.g.*, *Durrani v. Dep't of Justice*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009) (direct telephone numbers of Immigration and Customs Enforcement agents); *Asian Law Caucus v. U.S. Dep't of Homeland Sec.*, No. C 08-842, 2008 WL 5047839, at *4 (N.D. Cal. Nov. 24, 2008) (withholding names of databases and other information that could lead to improper accessing of Customs and Border Patrol databases); *Antonelli v. BOP*, 569 F. Supp. 2d 61, 65 (D.D.C. 2008) (file number used to index and retrieve information in investigatory files); *Summers v. U.S. Dep't of Justice*, 517 F. Supp. 2d 231, 239 (D.D.C. 2007)

(finding that FBI file numbers and source symbol numbers were "a matter of internal

significance in which the public has no substantial interest"); *Middleton v. U.S. Dep't of Labor*,

No. 06-72, 2006 WL 2666300, at *6 (E.D. Va. Sept. 15, 2006) (control identification numbers

withheld); *Changzhou Laosan Group v. U.S. Customs & Border Prot. Bureau*, No. 04-1919,

2005 WL 913268, at *3 (D.D.C. Apr. 20, 2005) ("computer function codes, internal file

numbers, and computer system and report identity" properly withheld as "low 2" information),

*partial reconsideration granted on other grounds*, 374 F. Supp. 2d 129 (D.D.C. 2005); *Coleman*

*v. FBI*, 13 F. Supp. 2d 75, 79 (D.D.C. 1998) (finding that the FBI properly withheld source

symbol numbers and file numbers used for administrative purposes under Exemption 2).

The "high 2" information withheld by CBP consists of internal matters, including

examination and inspection procedural information, internal reporting requirements, records

numbers, and instructions on how to process international travelers.  Pullo Decl. ¶ 13.  As

observed in the Pullo Declaration, disclosure of such information "would permit potential

violators" to "develop countermeasures to evade detection, inspection and targeting methods.

Public awareness of this operational information would aid those who seek to circumvent CBP

operations and thus harm the agency's ability to enforce the laws of the U.S."  *Id.*  This is

precisely the kind of information which Exemption 2 is designed to protect, and was properly

withheld here.  *See*, *e.g.*, *Durrani*, 607 F. Supp. 2d at 91; *Moayedi v. U.S. Customs and Border*

*Protection*, 510 F. Supp. 2d 73, 84-85 (D.D.C. 2007) (CBP detention and interrogation

procedures).

### C.   CBP Properly Withheld Law Enforcement Information Pursuant To Exemption 7.

CBP also withheld law enforcement materials pursuant to FOIA Exemption 7.  (This

10

information was also withheld pursuant to Exemption 2.)  Exemption 7 permits withholding of "records or information compiled for law enforcement purposes" meeting certain specified criteria.  5 U.S.C. § 552(b)(7).  "In assessing whether records are compiled for law enforcement purposes, ... the focus is on how and under what circumstances the requested files were compiled, and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'"  *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations omitted).  The range of law enforcement purposes falling within the scope of Exemption 7 includes government national security and counterterrorism activities. *See, e.g.*, *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003); *Kidder v. FBI*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007).  Furthermore, CBP, as a law enforcement agency, is entitled to deference when it identifies material as having been compiled for law enforcement purposes under Exemption 7.  *See Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 15 (D.D.C. 2009).

The information withheld here was compiled for law enforcement purposes within the meaning of Exemption 7, because, as explained in the Pullo Declaration, the information responsive to Plaintiff's requests concerns "inspection procedures, internal reporting requirements and instructions on how to process international travelers," information directly bearing on CBP's law-enforcement mission and activities.  Pullo Decl. ¶ 18.  Specifically, this information is properly withheld pursuant to Exemption 7(E).  This exemption permits withholding of information compiled for law enforcement purposes if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such

11

disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C.

§ 552(b)(7)(E).  Congress intended that Exemption 7(E) protect from disclosure techniques and

procedures used to prevent and protect against crimes, as well as techniques and procedures used

to investigate crimes after they have been committed.  *See*, *e.g.*, *PHE, Inc. v. Dep't of Justice*,

983 F.2d 248, 250–51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns

of violations, investigative techniques, and sources of information available to investigators were

protected by Exemption 7(E)).  Exemption 7(E) does not require a particular determination of

harm that would result from disclosure of specific records or information; rather, the exemption

categorically protects information related to law enforcement techniques.  *See Smith v. Bureau of

Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) ("Exemption 7(E) provides

categorical protection to information related to law enforcement techniques."); *Fisher v. U.S.

Dep't of Justice*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).  The

withholdings here fall squarely within the exemption and were proper.  Pullo Decl. ¶¶ 15-18; *see

also Barnard*, 598 F. Supp. 2d at 22 (upholding CBP withholding of examination and inspection

procedures, internal reporting requirements and instructions on how to process international

travelers).

## CONCLUSION

Defendants' releases and withholdings in response to Plaintiff's FOIA requests were

proper.  For each of the foregoing reasons, Defendants request summary judgment in their favor.


Dated: July 29, 2010                    Respectfully submitted,

                                        TONY WEST
                                        Assistant Attorney General

RONALD C. MACHEN, JR.
United States Attorney

ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
Deputy Branch Director

_____ *s/ Brigham J. Bowen* _____
BRIGHAM J. BOWEN (D.C. Bar No. 981555)
Civil Division, U.S. Department of Justice
Federal Programs Branch
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Ph.     (202) 514-6289
Fax     (202) 616-8470
brigham.bowen@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

CHRISTOPHER EARL STRUNK,     )
                                        )

       Plaintiff,            )
                                          )

v.                                )     Case No. 1:08-CV-02234 (RJL)
                                        )

U.S. DEPARTMENT OF STATE,     )
U.S. DEPARTMENT OF HOMELAND   )
SECURITY,                    )
                                        )

       Defendants.         )
_____)

## STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

As required by LCvR 7.1(h), and in support of the Motion for Summary Judgment filed on behalf the Department of State ("State") and the Department of Homeland Security ("DHS"), Defendants hereby make the following statement of material facts as to which there is no genuine issue.

## **PLAINTIFF'S FOIA REQUESTS**

1.     By letter dated October 16, 2008, Plaintiff submitted a Freedom of Information Act ("FOIA") request to State.  Galovich Decl. Ex. 1.

2.     On November 22, 2008, Plaintiff submitted an online FOIA request to State.  Galovich Decl. Ex. 3.

3.     By letter dated December 25, 2008, Plaintiff submitted a FOIA request to U.S. Customs and Border Protection.  Pullo Decl. Ex. C.

## DEFENDANTS' RESPONSES

4.      By letter dated January 12, 2009, State issued a response to Plaintiff's October 16 FOIA

request, stating that "[b]ased on the information contained in your communications, it

appears that the records you seek are with the Homeland Security's Bureau of Customs

and Border Protection."  Galovich Decl. Ex. 2.

5.      By separate letter dated January 12, 2009, State issued a response to Plaintiff's November

22 FOIA request.  In this response, State informed Plaintiff that, with respect to Stanley

Ann Dunham, State would process Plaintiff's request with respect to applications for U.S.

passports.  State also informed plaintiff that State would not reasonably maintain any

records of the sort listed in various categories described by Plaintiff, and that State would

not search for records concerning then-President-Elect Obama without a third-party

privacy waiver from Obama.  State also sought clarification from Plaintiff regarding

various other categories of records in Plaintiff's request.  Galovich Decl. Ex. 5.

6.      By letter dated February 3, 2009, CBP issued a response to Plaintiff's December 25, 2008

FOIA request.  In this response, CBP informed Strunk that it would not release records

relating to Obama because DHS regulations require privacy waivers before third-party

records can be released.  In conjunction with this response, CBP released to Strunk

responsive entry/exit records relating to Dunham.  Pullo Decl. Ex. A.

7.      CBP's search for responsive records relating to Dunham consisted of a search of the

TECS electronic database system, which includes traveler arrivals and departures into

and out of the United States from January 1982 onward.  Pullo Decl. ¶ 6.

8.      Prior to January 1982, paper entry documents were used.  Such documents no longer

exist and are no longer archived.  Pullo Decl. ¶ 6.

9.      In connection with this release of records, CBP withheld information pursuant to FOIA

Exemptions 2 and 7(E).  Pullo Decl. ¶ 7 & Ex. A.

10.     The "low 2" information withheld by CBP included purely administrative markings such

as record identification numbers, facsimile and phone numbers, and computer function

codes that instruct computer system users on how to navigate their way through the

system.  Pullo Decl. ¶ 11.

11.     Access to these file and computer systems is restricted from the public; accordingly,

public access to and knowledge of the internal computer system codes could facilitate

improper access to sensitive CBP records and interfere with CBP's ability to maintain

control of its information systems.  Pullo Decl. ¶ 12.

12.     The "high 2" information withheld by CBP included internal matters, including

examination and inspection procedural information, internal reporting requirements,

records numbers, and instructions on how to process international travelers.  Pullo Decl.

¶ 13.

13.     Disclosure of such information would permit potential violators to develop

countermeasures to evade detection, inspection and targeting methods.  Public awareness

of this operational information would aid those who seek to circumvent CBP operations

and harm the agency's ability to enforce the laws of the U.S.  Pullo Decl. ¶ 13.

14.     The information withheld by CBP pursuant to Exemption 7(E) concerned inspection

procedures, internal reporting requirements and instructions on how to process

international travelers, information directly bearing on CBP's law-enforcement mission

and activities.  Pullo Decl. ¶ 18.

15.  Upon evaluation of Plaintiff's FOIA request (200807238), State's Office of Information
     Programs and Services ("IPS") determined that the Office of Passport Services would be
     the only office that would reasonably be expected to maintain the records requested.
     Galovich Decl. ¶ 14.

16.  Passport Services is charged with issuing passports to U.S. citizens, and issues some 15
     million passports per year through 25 domestic agencies.  Galovich Decl. ¶ 14.

17.  The Passport Information Electronic Records System ("PIERS") is an electronic database
     that includes the records of some 144 million passports that have been issued from 1978
     to the present.   The Department of State also maintains paper records of some passport
     applications. Galovich Decl. ¶ 14.

18.  Passport Services conducted numerous searches of PIERS using the names DUNHAM,
     Stanley Ann; SOETORO, Stanley Ann; and, SUTORO, Stanley Ann.  Passport Services
     also conducted numerous searches of the paper records using the names  provided in
     Plaintiff's November 22, 2008 FOIA request, viz. DUNHAM, Stanley Ann; DUNHAM,
     Stanley Ann Obama; OBAMA, Stanley Ann; SOETORO, Stanley Ann; SOETORO,
     Stanley Ann Obama; and SUTORO, Stanley Ann Obama.  Galovich Decl. ¶ 15.

19.  As a result of these repeated searches of all records systems reasonably likely to contain
     the requested records, six responsive passport records were located.  Galovich Decl. ¶ 15.

20.  No record of a 1965 passport application referenced in an application for amendment of
     passport in the name of Stanley Ann Dunham was located.  Galovich Decl. ¶ 15.

21.  Many passport applications and other non-vital records from that period were destroyed
     during the 1980s in accordance with guidance from the General Services Administration.
     Galovich Decl. ¶ 12 & Ex. 7.

22.    By letter dated July 29, 2010, State issued a final response to Plaintiff's November 22,

2008 FOIA request.  In this response, State informed Plaintiff that State had completed its

search for records concerning Dunham responsive to Plaintiff's request, and that the

search resulted in the retrieval of six responsive documents.  Galovich Decl. ¶ 12 & Ex.

6.

23.    In this July 29 letter, State also informed Plaintiff that passport records maintained by

State typically consist of applications for United States passports and supporting evidence

of United States citizenship but do not include evidence of travel such as entrance/exit

stamps, visas, residence permits, etc., since this information is entered into the passport

book after issuance.  Galovich Decl. ¶ 12 & Ex. 6.

24.    In this letter, State also informed Plaintiff that a 1965 Dunham passport application

referenced in another Dunham passport application could not be located, and that many

passport applications and other non-vital records from that period were destroyed during

the 1980s in accordance with guidance from the General Services Administration.

Galovich Decl. ¶ 12 & Exs. 6, 7.


Dated: July 29, 2010                    Respectfully submitted,

                                        TONY WEST
                                        Assistant Attorney General

                                        RONALD C. MACHEN, JR.
                                        United States Attorney

                                        ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                        Deputy Branch Director

                                        ____s/ Brigham J. Bowen_____
                                        BRIGHAM J. BOWEN (D.C. Bar No. 981555)
                                        Civil Division, U.S. Department of Justice

Federal Programs Branch
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Ph.     (202) 514-6289
Fax     (202) 616-8470
brigham.bowen@usdoj.gov

*Counsel for Defendants*