IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER EARL STRUNK,<br><br>  Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF STATE et al.<br><br>  Defendants. | Civil Action No. 1:08-CV-02234<br>(RJL) |

## DECLARATION OF DOROTHY PULLO

I, Dorothy Pullo, declare as follows:

1.  I am the current Director of the Freedom and Information Act (FOIA) Division, Office of International Trade, U.S. Customs and Border Protection (CBP). As such, I am the official responsible for the overall supervision of the processing of Freedom of Information Act requests for information in CBP record systems, including records related to the processing of arriving aliens at the border. I have been employed by CBP (and the former U.S. Customs Service) for 28 years. I have been Director of the FOIA Division in Washington, D.C. since April 26, 2010.

2.  The statements made in this Declaration are made on the bases of: (1) my review of the official files and records of this office; (2) my personal knowledge of the internal operations of this office and agency; and (3) information acquired by me in the course of the performance of my official duties.

3.  I am familiar with the procedures followed by CBP in responding to requests for information from its files pursuant to the provisions of FOIA, and with the procedures followed in responding to the request made by Christopher Earl Strunk, the Plaintiff in the above-

captioned matter.

4. The purpose of this declaration is to inform the Court and Plaintiff of CBP's actions since it received the Plaintiff's request dated December 25, 2008, and to provide an explanation of the procedures used in the review and processing of the CBP records that are responsive to Plaintiff's FOIA request. In accordance with <u>Vaughn v. Rosen,</u> 484 F.2d 820 (D.C. Cir. 1973), this declaration and its attachments, including the <u>Vaughn</u> Index, provide the Court and Plaintiff with an identification of information that is withheld, the statutory exemption(s) claimed, and the justification for asserting the exemptions.

## PLAINTIFF'S FOIA REQUEST AND CBP'S SEARCH FOR RECORDS

5. By letter dated December 25, 2008, Plaintiff submitted a request to CBP pursuant to FOIA for travel documents related to Stanley Ann Dunham and President Barack Obama. Specifically, Plaintiff requested, in relevant part, any and all U.S. applications for a United States passport; entry and exit passport records pertaining to the United States and Kenya from the period of January 1, 1960 to December 30, 1975, and January 1, 1979 to December 31, 1985; entry and exit passport records pertaining to the United States and Indonesia from the period of January 1, 1960 to December 30, 1975, and January 1, 1979 to December 31, 1985; and travel records for the dates specified above traveling on a U.S. passport, Kenyan passport, Indonesian passport, and/or or any foreign passport for Ms. Dunham and President Obama. Plaintiff's letter was received by the FOIA Division on January 9, 2009, and an acknowledgement letter was dated January 14, 2009.

6. The TECS electronic database system began capturing traveler arrivals and departures into and out of the United States beginning in January of 1982. TECS is operated and utilized by CBP conduct enforcement checks on individuals seeking to enter or depart the United States.

2

TECS includes the combined databases of over 20 federal agencies. Prior to 1982, paper entry documents were used. Such documents no longer exist and are no longer archived.

Working with the CBP Office of Chief Counsel, the FOIA Division conducted a search in the TECS electronic database for arrival and departure records for Stanley Ann Dunham for dates that would be responsive to the Plaintiff's request. TECS was searched because CBP FOIA Division believed the system was most likely to have entry and exit data pertaining to Ms. Dunham. One page of responsive records for Stanley Ann Dunham was located and redacted.

7. The documents were reviewed and processed by the CBP FOIA Division, and by letter dated February 3, 2009, CBP issued its response to the Plaintiff. A copy of CBP's February 3, 2009, response to Plaintiff is attached hereto as Exhibit A. In its response, CBP enclosed a one page document responsive to Plaintiff's request. The document was released with certain redactions made pursuant to 5 U.S.C. §§ 552 (b)(2) and (b)(7)(E). The letter to Plaintiff dated February 3, 2009 incorrectly stated that redactions were also made pursuant to 5 U.S.C. §§ (b)(6) and (b)(7)(c).

8. CBP also informed the Plaintiff in the February 3, 2009 letter that under 6 C.F.R. § 5.21(f), in the case of third party information requests, the requester must supply the agency with a statement from the third party verifying his or her identity and certifying that individual's agreement that records concerning him or her may be accessed, analyzed and released to a third party. The Plaintiff did not include the necessary documentation with regard to President Obama. Plaintiff was asked to provide the documentation within 30 days from the date of the letter, or CBP would assume that Plaintiff was no longer interested in this FOIA request, and the case would be administratively closed. No such documentation was provided by Plaintiff.

3

## EXPLANATION OF FOIA EXEMPTIONS ASSERTED

9. In total, CBP has released in part one page of records to Plaintiff, redacting certain information pursuant to FOIA exemptions (b)(2) and (b)(7)(E).

### A. Exemption (b)(2): information related solely to the internal personnel rules and practices of an agency

10. Section 552(b)(2) of Title 5 of the U.S. Code exempts from mandatory disclosure matters that are "... related solely to the internal personnel rules and practices of an agency." Exemption (b)(2) encompasses two distinct categories of information: (a) internal matters of a relatively trivial nature, sometimes referred to as "low 2" information, and (b) more substantial internal matters the disclosure of which would risk circumvention of a legal requirement, sometimes referred to as "high 2" information. The use of Exemption (b)(2) in this case involves both "low 2" and "high 2" information.

11. The "low 2" information withheld pursuant to Exemption (b)(2) consists of administrative markings such as record identification numbers facsimile and phone numbers, record ID numbers and computer function codes that instruct computer system users on how to navigate their way through the system.

12. These markings are purely internal and are used by CBP for the purposes of indexing, storing, locating, retrieving and distributing information in the CBP databases. As access to the file and computer systems is restricted from the public, the public has little or no interest in this information such as the internal record identification numbers, fax and telephone numbers and computer codes. In addition, knowledge of internal agency computer system codes could facilitate improper access to sensitive CBP records and interfere with CBP's ability to maintain control of its information systems. Additionally, disclosure of this information would not in any way fulfill the purposes of the FOIA—which is to open agency action to the light of public

scrutiny.

13. The "high 2" information withheld pursuant to Exemption (b)(2) is internal and does not impact, in any substantive manner, upon plaintiff. This "high 2" information consists of internal matters and includes examination and inspection procedures, internal reporting requirements, records numbers and instructions on how to process international travelers. Disclosure of this information would permit potential violators to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and targeting methods. Public awareness of this operational information would aid those who seek to circumvent CBP operations and thus harm the agency's ability to enforce the laws of the U.S. Any further detailed description of the information withheld pursuant to high (b)(2) would divulge to Plaintiff the examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers, the very information that CBP seeks to protect.

### B. Exemption (b)(7): records or information compiled for law enforcement purposes

15. Section 552(b)(7) of Title 5 of the U.S. Code provides that FOIA protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information .. (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

16. CBP is a law enforcement agency with enforcement responsibilities for over 400 Federal statutes, on behalf of over 40 different federal agencies. CBP's mission is to protect the borders of the United States against terrorists and the instruments of terror, enforce the customs and

immigration laws of the United States, and foster our Nation's economy by facilitating lawful international trade and travel. Its mission includes the processing of passengers, conveyances, and merchandise entering, transiting and departing the United States. The creation and implementation of effective law enforcement systems and procedures is paramount to achieving this mission.

**(1)    5 U.S.C. § 552(b)(7)(E): records or information compiled for law enforcement purposes which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law**

17.    Section 552(b)(7)(E) of Title 5 of the U.S. Code exempts from mandatory disclosure "records or information compiled for law enforcement purposes" the disclosure of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

18.    The information withheld pursuant to Exemption (b)(7)(E) consists of law enforcement techniques, procedures and guidelines such as: examination and inspection procedures, internal reporting requirements, instructions on how to process international travelers, questioning techniques, criteria and considerations used in decision-making, names of specific law enforcement databases used in a particular context, names of specific database modules searched in a particular context, specifications regarding detentions, procedures for the safeguarding of weapons, list of items to be removed for an individual's safety, approval procedures, information regarding location of searches, names of special teams and units activated, specific topics for questioning, certain techniques and analysis used by inspectors, certain law enforcement techniques used for gathering information, procedures related to internal coordination,

information pertaining to intelligence guidelines, referral rates, criteria that would lean towards making a referral, specific step-by-step instructions on how to process and secure fraudulent documents, titles of special positions, information which would reveal the strengths or weaknesses of certain law enforcement methods, information which would reveal the scope and focus of certain law enforcement techniques, information which would reveal precise details regarding certain examination and inspection methods and guidelines, information related to the operation of government watch lists, particular types of secondary inspection, specific language to be used in creating particular records, instructions on where to store information, name of specific software used, clearance or authorization procedures, names of specific equipment or capabilities used, external coordination procedures, internal coordination procedures, instructions regarding reporting requirements, instructions regarding how to access certain electronic databases, locations of certain capabilities, composition of special unit(s) and step-by-step instructions on how to process certain information. Disclosure of this information would permit potential violators, to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and examination methods. Public awareness of this operational information would aid those who seek to circumvent CBP operations and thus harm the agency's ability to enforce the laws of the United States. Any further detailed description of the information withheld pursuant to (b)(7)(E) would divulge to Plaintiffs the examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers, the very information that CBP seeks to protect.

## SEGREGABILITY

19. The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are

exempt...." 5 U.S.C. §552(b). I have conducted a line-by-line review of each record identified as responsive to Plaintiff's FOIA requests to identify information which is exempt from disclosure or for which a discretionary waiver of exemption could be applied and to determine which records must be produced in a redacted form, as set forth in the <u>Vaughn</u> index attached hereto (Exhibit B).

20. All information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. Information withheld was individually determined to be exempt from release, as shown in the attached <u>Vaughn</u> index (Exhibit B).

### Jurat Clause

21. I declare under penalty of perjury, that the matters and facts set forth in this Declaration fall within my official purview and, based upon my personal knowledge, information, and belief, are correct and true.

Executed this 15 day of July, 2010.

Dorothy Pullo
Director, FOIA Division
Office of International Trade
U.S. Customs and Border Protection
Washington, D.C.

**EXHIBIT A**

799 9th Street NW
Washington, DC 20229



**U.S. Customs and Border Protection**

February 3, 2009

Christopher E. Strunk
593 Vanderbilt Avenue, #281
Brooklyn, New York 11238

Re:  **Stanley Ann Dunham
Barack H. Obama
2009F6291**

Dear Mr. Strunk:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request, dated December 25, 2008, to U.S. Customs and Border Protection (CBP). You are seeking travel files for Stanley Ann Dunham and Barack H. Obama. Your request was received in this office on January 9, 2009.

Concerning President Obama's travel records, please be advised that DHS regulations require, in the case of third party information requests, a statement from the individual verifying his or her identity and certifying that individual's agreement that records concerning him or her may be accessed, analyzed and released to a third party. See 6 C.F.R. § 5.21(f). Because you have not provided this documentation with your request, we are unable to initiate a search for responsive records. Please provide the requested documentation within 30 days from the date of this letter, or we will assume you are no longer interested in this FOIA/PA request, and the case will be administratively closed.

This is not a denial of your request. Upon receipt of a perfected request, you will be advised as to the status of your request.

With regard to records pertaining to Stanley Ann Dunham, who is widely known as a matter of public record to be deceased, you requested documents pertaining to Ms. Dunham involving entry and exits into and out of United States from January 01, 1960 through December 31, 1975, and January 1, 1979 through December 31, 1985. There are no entry/exit records available prior to 1982, either in electronic or paper format.

A search for documents responsive to your request produced a total of one page. CBP has determined that the one page is partially releasable pursuant to Title 5 U.S.C. § 552 (b)(2)(high), (b)(2)(low), (b)(6), and (b)(7). Enclosed is one page with certain information withheld as described below.

**FOIA Exemption 2(low)** protects information applicable to internal administrative personnel matters to the extent that the information is of a relatively trivial nature and there is no public interest in the document.

**FOIA Exemption 2(high)** protects information applicable to internal administrative and personnel matters, such as operating rules, guidelines, and manual of procedures of examiners or adjudicators, to the extent that disclosure would risk circumvention of an agency regulation or statute, impede the effectiveness of an agency's activities, or reveal sensitive information that may put the security and safety of an agency activity or employee at risk. Whether there is any public interest in disclosure is legally irrelevant. Rather, the concern under high 2 is that a FOIA disclosure should not benefit those attempting to violate the law and avoid detection.

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right privacy. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination.

You have the right to appeal the above determination regarding Ms. Dunham's records. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter to: FOIA Appeals, Policy and Litigation Branch, U.S. Customs and Border Protection, 799 9th Street, NW, Mint Annex, Washington, DC 20229, following the procedures outlined in the DHS regulations at 6 CFR § 5.9. Your envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

2

Provisions of the FOIA allow us to recover part of the cost of complying with your request. In this instance, because the cost is negligible, there is no charge. 6 CFR §5.11(d)(4).

If you have any questions or would like to discuss this matter, please feel free to contact this office at 202-325-0150. For ease of reference, please notate file number 2009F6291.

Sincerely,

*Mark Hanson*

Mark Hanson
Director
FOIA Division
Office of International Trade

```
                              PRIMARY QUERY HISTORY
                                PASSENGER ACTIVITY
                                                                   PAGE NO.  0001
                                     ------ QUERY ------  LNE     TERM/
         NAME                  DOB   DATE  TIME AGN RSLT  TYP REF LANE       API DIM

DUNHAM, STANLEY                112942 081084 1538   b(2),b(7)(E) AIR   low(b)(2)  N  N
  A321-HONOLULU, AIRPORT        DOC:                             INSP:
DUNHAM, STANLEY                112942 080483 1501               AIR   low(b)(2)  N  N
  A321-HONOLULU, AIRPORT        DOC:                             INSP:
DUNHAM, STANLEY                112942 061382 1411               AIR   low(b)(2)  N  N
  A321-HONOLULU, AIRPORT        DOC:                             INSP:
```

**EXHIBIT B**

Vaughn Index for *Strunk v. Dept. of State, et al.*
Case No. 1:08-CV-2234

| Document Bates Number | Document Description | Number of pages | Disposition & Exemption(s) |
|---|---|---|---|
| 00001 | **Type:** TECS Printout of Travel Documents for Stanley Dunham for Dates January 1, 1979-December 31, 1985<br><br>**Date Retrieved:** January 14, 2009<br><br>**Location:** TECS | 1 | Document released with partial redactions.<br><br>Exemption (b)(2) (low) protects information applicable to internal administrative personnel matters to the extent that the information is of a relatively trivial nature and there is no public interest in this information.<br><br>Information is redacted pursuant to 5 U.S.C. § 552(b)(2)(high) and 5 U.S.C. § 552(b)(7)(E), as it pertains to records compiled for law enforcement purposes, the release of which would disclose certain techniques or procedures for law enforcement investigations or prosecutions. Information redacted consists of inspection for entry activities and disposition. |

**EXHIBIT C**

Christopher Earl Strunk
593 Vanderbilt Avenue - #281
Brooklyn, New York 11238

Bureau of Customs and Border Control
of the U.S. Department Of Homeland Security
799 9th Street, N.W.
Mint Annex
Washington D.C 20229

Attn: Mark Hanson Director FOIA Division

> Subject: Freedom of Information Act Request
> for travel records of Stanley Ann Dunham
> (Obama) and Barack Hussein Obama, Jr. a/k/a
> Barry Soetoro.

Dear Director Hanson,

As of right under the Freedom of Information Act, 5 U.S.C. subsection 552, I am requesting information or records related to:

    a. Stanley Ann Dunham, a/k/a Ann Dunham a/k/a Stanley Ann Obama a/k/a Ann Obama a/k/a Stanley Ann Soetoro a/k/a Ann Soetoro a/k/a Stanley Ann Sutoro a/k/a Ann Sutoro a/k/a Stanley Ann Dunham Obama a/k/a Ann Dunham Obama, born November 29, 1942 at Wichita KS. U.S., a.k.a. Stanley Ann Dunham Obama and who died on November 7, 1995 under the name Stanley Ann Dunham Soetoro (a.k.a. Sutoro), SSN: 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; and

    b. Barack Hussein Obama, Jr. a/k/a Barry Soetoro Date of Birth: August 4, 1961 and as a living natural person; and

In regards to the following documents:

    c. Any and all U.S. Applications for a U.S. Passport;
    d. Entry and Exit Passport Records pertaining to the United States and Kenya from the period of time of January 01, 1960 to December 31, 1975 and January 1, 1979 to December 31, 1985;
    e. Entry and Exit Passport Records pertaining to the United States and Indonesia from the period of time of January 01, 1960 to December 31, 1973 and January 1, 1979 to December 31, 1985;

    f. The above travel records on for the dates specified traveling on a U.S. Passport, Kenyan Passport, Indonesian Passport or any other foreign passport and/or visa;

    g. Foreign Birth Certificate registered and filed with the U.S. Embassy, Kenya and/or U.S. Embassy of Indonesia for Barack H. Obama a/k/a Barry Soetoro, Date of Birth: August 4, 1961;

    h. Foreign Birth Registry filed with the U.S. Embassy, Kenya and/or U.S. Embassy of Indonesia by Stanley Ann Dunham, et al. Registering the birth of Barack H. Obama a/k/a Barry Soetoro, Date of Birth: August 4, 1961; and

    i. Adoption Records and/or Governmental "Acknowledgment" wherein Barack H. Obama a/k/a Barry Soetoro was "acknowledged" as Lolo Soetoro, M.A.'s son.

I, Christopher Earl Strunk, declare under penalty of perjury, pursuant to 28 U.S.C. §1746 as follows:

I am petitioner with place for service at 593 Vanderbilt Avenue #281 Brooklyn, New York 11238; Email: cestrunck@yahoo.com with Cell- (845) 901-6767.

This declaration is in support of my Freedom of Information Act request that seeks personal information about a living person subject Barry Soetoro a/k/a Barack Hussein Obama, as a matter of personal non commercial use; and that

In addition the deceased person who died on November 7, 1995 under the name Stanley Ann Dunham Soetoro (a.k.a. Sutoro), with SSN: 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, remains deceased according to a Wikipedia report (see attached), and as a matter of Bureau of Customs and Border Control concern, based upon information and belief there is an imposter presently using the deceased SSN: 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 for employment at the Ford Foundation and is residing in New York City.

If there are any *fees* for searching for, reviewing, or copying the records, please let me know before you task my request.

If you deny all or any part of this request, please cite each specific Exemption you think justifies your refusal to release the information and notify me of appeal procedures available under the law.

                  Dated: December 25, 2008
                  Brooklyn New York

                                Christopher Earl Strunk

**attachment**

# Stanley Ann Dunham : From Wikipedia, the free encyclopedia

### Ann Dunham



Photo of Ann Dunham, circa 1971

| | |
|---|---|
| **Born** | Stanley Ann Dunham<br>November 29, 1942<br>Fort Leavenworth, Kansas, US |
| **Died** | November 7, 1995 (aged 52)<br>Honolulu, Hawaii, US |
| **Cause of death** | Ovarian and uterine cancer |
| **Resting place** | Pacific Ocean |
| **Nationality** | American |
| **Education** | B.A., M.A., Ph.D.[1] |
| **Alma mater** | University of Hawaii |
| **Occupation** | Rural development |
| **Home town** | Wichita, Kansas |
| **Spouse(s)** | Barack Obama (Sr.)<br>(1961–1964) (divorced)<br>Lolo Soetoro<br>(c. 1967–1980) (divorced) |
| **Children** | Barack Obama<br>Maya Soetoro-Ng |
| **Parents** | Madelyn and Stanley Dunham |

**Stanley Ann Dunham Soetoro** (November 29, 1942 – November 7, 1995), known as **Ann Dunham**, and later as **Ann Sutoro**[1] was an anthropologist who specialized in rural development. Born in Kansas, Dunham attended high school near Seattle, Washington, and spent most of her adult life in Hawaii. She was the mother of United States Senator and presidential candidate

## Early life

Ann Dunham was born in Fort Leavenworth, Kansas[3] (some say Wichita, Kansas),[4] while her father was in the military.[5] She was named after her father,[3] who reportedly gave his daughter and only child his name because he had wanted a boy; however, she was referred to as "Ann."[6]

Her parents, Stanley Armour Dunham (born on March 23, 1918, raised in El Dorado, Kansas, died February 8, 1992—buried in the Punchbowl National Cemetery) and Madelyn Dunham (née Madelyn Lee Payne) (who was born in 1922 and raised in Augusta, Kansas and is still living in Honolulu, Hawaii), met in Wichita, Kansas, and married on May 5, 1940.[7]

After the Pearl Harbor attack her father joined the Army and her mother worked at a Boeing plant in Wichita.[3] At the end of World War II she moved with her parents to California, Texas, and Seattle, Washington, where her father was a furniture salesman and her mother worked for a bank. The family moved to Mercer Island, Washington, in 1956 so that 13-year old Ann could attend the Mercer Island high school that had just opened,[6] where teachers Val Foubert and Jim Wichterman taught the importance of challenging societal norms and questioning authority. Dunham took the lessons to heart; "She felt she didn't need to date or marry or have children." A classmate remembers her as

"intellectually way more mature than we were and a little bit ahead of her time, in an off-center way."[6]. One high school friend described her as: "If you were concerned about something going wrong in the world, Stanley [Ann] would know about it first ... We were liberals before we knew what liberals were." Another called her "the original feminist."[6]

## Move to Hawaii and first marriage

In 1959 Dunham's parents moved to Hawaii to pursue further business opportunities in the new state. She soon enrolled at the University of Hawaii at Manoa, where she studied anthropology. She met Barack Obama Sr., a student from Kenya and the school's first African student, in a Russian language class at the University.[2] When they became engaged, both sets of parents opposed the marriage, with Obama's father in particular objecting. Nevertheless, the couple married on February 2, 1961 in Maui, Hawaii, after discovering she was pregnant.[6][1]

On August 4, 1961, at age 18, she gave birth to her first child, named Barack Obama II.

In an interview, Senator Obama referred to his mother as "the dominant figure in my formative years... The values she taught me continue to be my touchstone when it comes to how I go about the world of politics."[6]

Obama Sr. left Ann and their son in 1963, when he began studying at Harvard University in Cambridge, Massachusetts. Dunham filed for divorce in Honolulu, Hawaii in January 1964; Obama did not contest it and the divorce was granted.[1] The senior Obama obtained a masters degree in economics at Harvard and in 1965, returned to Kenya, where he obtained a position in the Kenyan government. Friends report that, later in life, he "was drinking too much" and became bitter and frustrated.[6] He was killed in an automobile accident in 1982.[8]



Ann Dunham and Barack Obama

### References

1. ^ a b c d e Amanda Ripley (2008-04-09). "The Story of Barack Obama's Mother", *Time*. Retrieved on 2007-04-09.
2. ^ a b c d e f g h Scott, Janny (2008-03-14). "A Free-Spirited Wanderer Who Set Obama's Path", *New York Times*. Retrieved on 2008-03-21.
3. ^ a b c Fred Mann (2008-02-02). "Kansas roots show in Obama", *The Wichita Eagle*, via Topix, p. 1B. Retrieved on 2008-04-01.
4. ^ http://www.wargs.com/political/obama.html
5. ^ Obama Press Office (2008-01-29). "Gov. Kathleen Sebelius Endorses Barack Obama", Reuters. Retrieved on 2008-04-01.
6. ^ a b c d e f g h Tim Jones (2007-03-27). "Obama's mom: Not just a girl from Kansas: Strong personalities shaped a future senator", *Chicago Tribune*. Retrieved on 2008-01-22.
7. ^ a b "A Special Report: The Obama Family Tree". *Chicago Sun-Times* (2007-09-09). Retrieved on 2008-04-01.
8. ^ Muliro Telewa (2004-08-20). "US election makes waves in Kenya", *BBC News*. Retrieved on 2008-04-01.