# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER EARL STRUNK, ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:08-CV-02234 (RJL) |
| ) | |
| U.S. DEPARTMENT OF STATE, ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| ) | |
|      Defendants. ) | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

By this Freedom of Information Act ("FOIA") action, *pro se* Plaintiff Christopher Strunk seeks passport and travel records relating to President Barack Obama and his mother, Stanley Ann Dunham, from the Department of State ("State") and the Department of Homeland Security ("DHS"). The Court has previously dismissed all claims relating to records concerning the President, leaving only the requests for records concerning Ms. Dunham at issue. *See* March 16, 2010 Order [Dkt. #31]. Defendants have now completed processing of these requests and have released documents to Plaintiff, subject to appropriate withholdings under FOIA.

In response to Defendants' motion for summary judgment [Dkt. #37], Plaintiff has filed three documents, in which Plaintiff raises a wide variety of arguments, few of which even remotely address the operative question at issue: whether Defendants have appropriately responded to Plaintiff's requests. *See* Pl.'s Opp'n [Dkt. #39], Suppl. Strunk Decl. [Dkt. #41], 2nd Suppl. Strunk Decl. [Dkt. #40]. Indeed, the only aspect of Defendants' response addressed by Plaintiff's filings is the fact that, in searching for passport applications filed by Ms. Dunham,

State could not locate a passport application that was identified separately in another document released to Plaintiff.  Whatever may be said of Plaintiff's wide-ranging theories, they fail to address the sole operative question regarding this putative document: whether State's search was reasonable.  It was.  Accordingly, because there are no genuine issues in dispute, Defendants are entitled to summary judgment in their favor as a matter of law.[1]

## ARGUMENT

In his three responsive filings to Defendants' motion for summary judgment, Plaintiff presents the Court with a wide variety of contentions, including allegations that President Obama engaged in "destruction of the California San Joaquin Valley Agricultural sector by maliciously withholding water with intent of Chinese Red Army ownership and control over food production to starve of the People of California and the USA," Strunk Decl. [Dkt. #39] at 3 n.1; allegations that a Philip Hans Jacobsen filed a FOIA request for records concerning Jacobsen's own mother and received them, *id.* at 4; *see also* Jacobsen Aff. [Dkt. #39-1]; allegations concerning the Bank of Hawaii, Strunk Decl. [Dkt. #39] at 26-27; and allegations regarding a school Plaintiff has identified as College Notre-Dame de Jamhour in Beirut, Lebanon, Suppl. Strunk Decl. [Dkt. #41] at 6-11.  Plaintiff also has filed a third-party affidavit from a William A. Richardson, who contends that he engaged in correspondence with the General Services Administration ("GSA") and that this purported correspondence somehow calls into question the veracity of State's filings in support of summary judgment.  Richardson Aff. [Dkt. #40-1].

Insofar as counsel is able to discern them, Plaintiff's contentions that legitimately relate

---

[1] Because Defendants have processed Plaintiff's requests, Plaintiff's motion to compel [Dkt. #35] should be denied as moot.

to Defendants' responses to his FOIA requests appear to assert (1) that State could not have failed to locate the putative 1965 Dunham passport application, because other individuals have obtained passport applications submitted during time periods that "generally coincide with the same time frame of Plaintiffs FOIA requested of Stanley Ann Dunham with Barack Hussein Obama also named on those documents too," Pl.'s Mem. in Supp. of Opp'n [Dkt. #39-1 (pp. 80-83)] at 2; and (2) that State could not have discarded the putative passport application because GSA did not, Plaintiff contends, provide directives to State authorizing such destruction, 2nd Suppl. Strunk Decl. [Dkt. #40].[2]   Plaintiff's assertions are misguided on two basic levels.   The first is that they are factually incorrect.   The second (and more important) is that they are irrelevant.   At issue in this FOIA suit is not whether State acted properly or improperly with regard to its decades-ago document retention actions (although State emphatically asserts that is has acted properly in this regard), but whether State's <u>search for responsive documents</u>, given its existing records, was reasonable.   *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).   And Plaintiff has raised no legitimate challenge to the reasonableness of State's search. Accordingly, State is entitled to summary judgment.

Defendants' searches for records responsive to Plaintiff's requests were reasonably calculated to uncover all documents responsive to the requests.   As explained in the Declaration of Alex Galovich, the Acting Director of the Office of Information Programs and Services ("IPS") at State, IPS determined that the Office of Passport Services would be the only office that reasonably would be expected to maintain the records requested.   Galovich Decl. in Supp. of

---

[2]Plaintiff makes no allegations concerning CBP's response.   Accordingly, he concedes that CBP is entitled to summary judgment.

Mot. for Summ. J. [Dkt. # 37-2] at ¶ 14.  That office "is charged with issuing passports to U.S. citizens, and issues some 15 million passports per year through 25 domestic agencies." *Id.*  The Office of Passport Services maintains the Passport Information Electronic Records System ("PIERS"), "an electronic database that includes the records of some 144 million passports that have been issued from 1978 to the present." *Id.*  State also maintains paper records of some passport applications. *Id.*[3]

In response to Plaintiff's request for records concerning Ms. Dunham, Passport Services conducted numerous searches of PIERS using the names provided in Plaintiff's November 22, 2008 FOIA request, including DUNHAM, Stanley Ann; SOETORO, Stanley Ann; and SUTORO, Stanley Ann. *Id.* ¶ 15.  Passport Services also used those names (and others, including DUNHAM, Stanley Ann; DUNHAM, Stanley Ann Obama; OBAMA, Stanley Ann; SOETORO, Stanley Ann; SOETORO, Stanley Ann Obama; and SUTORO, Stanley Ann Obama) in conducting numerous searches of the paper records. *Id.*  Six responsive passport records were located. *Id.*  One application for amendment of passport submitted by Ms. Dunham made reference to a 1965 passport application.  Despite numerous searches, State was unable to locate this application. *Id.*

State's searches were "reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.  State identified the system likely to contain relevant documents, searched them, located responsive documents, and released them to Plaintiff. *James Madison*

---

[3] As further explained in State's written response to Strunk's request, passport records "typically consist of applications for United States passports and supporting evidence of United States citizenship.  Passport records do not include evidence of travel such as entrance/exit stamps, visas, residence permits, etc., since this information is entered into the passport book after issuance."  Galovich Decl. Ex. 6 at 1.

*Project v. CIA*, 605 F. Supp. 2d 99, 108 (D.D.C. 2009) (concluding that "search method could reasonably be expected to produce the information requested" because all agency regulations requested were maintained in one records system and agency searched that system for responsive records); *Brehm v. DOD*, 593 F. Supp. 2d 49, 50 (D.D.C. 2009) (finding search was adequate where agency searched two systems likely to have responsive records and where agency also declared that other systems were unlikely to have responsive records).

Plaintiff's contentions aimed at calling State's search into question are of no moment. Plaintiff's theory, supported by the Jacobsen Affidavit, that other requesters have obtained documents from dates that "generally coincide" with the time frame of his requests is so broad as to prove nothing.  It is unsurprising that State was able to retrieve and provide to Mr. Jacobsen passport applications submitted by his mother in the 1950s and 1980s; indeed, State was able to provide to Mr. Strunk numerous applications submitted by Ms. Dunham during these periods.  It simply was not able to locate one document to which reference was made in another passport amendment application.  As the D.C. Circuit has observed, "it is long settled that the failure of an agency to turn up one specific document in its search does not alone render a search inadequate....  After all, particular documents may have been accidentally lost or destroyed, or a reasonable and thorough search may have missed them." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  Moreover, as Plaintiff's own filings concede, State does not maintain paper copies of all passport applications filed in the 1960s. Jacobsen Aff. [Dkt. #41-2] at ¶ 20 (observing that State maintains "<u>some</u> passport application records created between 1962 and 1978") (emphasis added).  It therefore should not surprise anyone that State might locate some, but not all, applications submitted by a single individual over the course of decades.

Although the precise disposition of the putative 1965 Dunham passport application is not known, State explained to Strunk that "[m]any passport applications and other non-vital records from that period were destroyed during the 1980's in accordance with guidance from the General Services Administration."  Galovich Decl. Ex. 6 at 1.  The exhibits filed in support of State's motion explain further the guidance provided by GSA.  As set forth in a cable attached to the Galovich Declaration, "[s]ince the late 1960's the General Services Administration had pressured the Bureau of Consular Affairs [at State] to reduce the volume of passport applications and related records stored at [the Federal Records Center]."  Galovich Decl. Ex. 7 at 2.  In response to this pressure, the Consular Affairs Bureau "decided to reduce the holdings of records at FRC by eliminating all non-permanent, routine records, retaining those records of permanent significance including those containing information on, or documentation of, citizenship."  *Id.* Among the documents scheduled for destruction were "routine passport applications for native born citizens."  *Id.* at 3.  The 1965 Dunham application may have been discarded in this records-disposition process.[4]

In any event, the origin of State's decision to discard certain records (including, possibly, the putative 1965 Dunham passport application) is irrelevant, as are the decision and records

---

[4]As to Plaintiff's notion that GSA did not provide formal guidance to State to dispose of records, that notion is unavailing.  Plaintiff's reliance on correspondence purportedly taking place between William Richardson and GSA is misguided, as it is premised on the faulty assumption that GSA must have issued some sort of formal directive to State in order for State's response to be justified (or accurate).  Even if the Court were to indulge Mr. Richardson's contention that GSA had issued no formal "directive" to State (and there are myriad reasons not to accept Mr. Richardson's third-party characterizations of the actions taken by another third-party federal agency), it is nonetheless beyond contention that, as set forth in Exhibit 7 to the Galovich Declaration, GSA had "pressured" State, since the late 1960s, "to reduce the volume of passport applications and related records stored at FRC."  Galovich Decl. Ex. 7 at 2.

purge themselves.  The only relevant inquiry here is whether State's 2010 FOIA <u>search</u> was

reasonable.  And it manifestly was.  *Iturralde*, 315 F.3d at 315.  There is no basis for Plaintiff,

searching for evidence to prove up his varied theories concerning the President, to use this FOIA

action to re-open or investigate the basis for document-retention practices decades ago at State.[5]

State responded to his FOIA requests with a reasonable search and released the documents it

found.  Plaintiff is entitled to nothing more.

## CONCLUSION

Defendants' releases and withholdings in response to Plaintiff's FOIA requests were

proper.  For each of the foregoing reasons, Defendants request summary judgment in their favor.


Dated: September 16, 2010                Respectfully submitted,

                                         TONY WEST
                                         Assistant Attorney General

                                         RONALD C. MACHEN, JR.
                                         United States Attorney

                                         ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                         Deputy Branch Director

---

[5]There is also no basis for granting Plaintiff's requests for "complete discovery on the
entire record of Stanley Ann Dunham back to November 29, 1942" or for leave to file a second
amended complaint.  Suppl. Strunk Decl. [Dkt. # 41] at ¶ 27; 2nd Suppl. Strunk Decl. [Dkt. #40]
at ¶ 10; *see Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) ("Discovery is generally unavailable
in FOIA actions.") (quoting *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003)); *Voinche
v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006) (FOIA discovery is rare and "is usually limited to
the adequacy of the agency's search and similar matters"); *Schrecker v. U.S. Dep't of Justice*,
217 F. Supp. 2d 29, 35 (D.D.C. 2002) ("Discovery in FOIA is rare and should be denied where
an agency's declarations are reasonably detailed, submitted in good faith and the court is
satisfied that no factual dispute remains.").

_____s/ Brigham J. Bowen_____
BRIGHAM J. BOWEN (D.C. Bar No. 981555)
Civil Division, U.S. Department of Justice
Federal Programs Branch
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Ph.     (202) 514-6289
Fax     (202) 616-8470
brigham.bowen@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of September, 2010, I caused a true and correct copy of the foregoing memorandum to be served upon Plaintiff by first class United States mail, postage prepaid marked for delivery to:

**Christopher E. Strunk**
**593 Vanderbilt Ave., #281**
**Brooklyn, NY 11238**

_____*s/ Brigham J. Bowen*_____
Brigham J. Bowen

9