**RECEIVED**

SEP 2 3 2010

Clerk, U.S. District and
Bankruptcy Courts

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
--------------------------------------------------x
                                                  )
Christopher-Earl: Strunk © in esse,               )
593 Vanderbilt Ave. – 281 Brooklyn 11238          )
                                                  )
                                     Plaintiff,   )      Civil Action No.: 08-2234 (RJL)
v.                                                )
                                                  )
U.S. DEPARTMENT OF STATE et al                    )
                                                  )
                                    Defendants.   )
                                                  )
--------------------------------------------------x
```

## NOTICE OF MOTION FOR PERMISSION TO FILE A SURREPLY

**PLEASE TAKE NOTICE** that upon the annexed declaration of Christopher-Earl : Strunk in

esse, September 22, 2010 with the Affidavit of Philip Hans Jacobsen annexed along with

Plaintiff's Surreply Memorandum of Law, will move this Court, for permission to file a Surreply

to Defendants' Counsel Reply of September 16, 2010 before the Honorable Richard J. Leon,

U.S.D.J, at a time afforded by the Court if necessary at the United States Courthouse, at 333

Constitution Avenue, NW., Washington, DC 20001, on the day and month in 2010 , at a time

and courtroom designated by the court, or as soon thereafter as counsel can be heard.

Dated: September 22, 2010
Albemarle County Virginia

Christopher-Earl: Strunk ©in esse
**593 Vanderbilt Avenue #281**
**Brooklyn, New York 11238**
**Email: chris@strunk.ws  Ph. 845-901-6767**

cc:    Brigham John Bowen AUSA
       U.S. DEPARTMENT OF JUSTICE
       20 Massachusetts Avenue, NW
       Washington, DC 20530

ↄ

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------------x
                                    )
Christopher-Earl: Strunk © in esse, )
593 Vanderbilt Ave. - 281 Brooklyn 11238  )
                                    )
                        Plaintiff,  )
                                    )
v.                                  )
                                    )
U.S. DEPARTMENT OF STATE et al. )
                                    )
                        Defendants. )
                                    )
-------------------------------------------------x
```

Civil Action No.: 08-2234 (RJL)

## PLAINTIFF'S DECLARATION IN SUPPORT OF

## THE NOTICE OF MOTION FOR PERMISSION TO FILE A SURREPLY

I, **Christopher-Earl: Strunk © in esse,** declare under penalty of perjury, pursuant to 28 U.S.C. §1746 as follows:

1. That Declarant / Plaintiff herein is self-represented without being an attorney submits this declaration in support of the Notice of Motion for permission to file a Surreply to Defendants' Counsel's Reply filed September 16, 2010; and that with permission the accompanying Memorandum of Law as such is Plaintiff's Surreply per se.

2. Plaintiff is entitled to a Surreply due to the lack of evidence submitted

in Defendants' motion for summary judgment [Dkt. #37], when in response

to wit Plaintiff filed three documents (Response) by August 26, 2010, and

then in the Defendants Reply of September 16, 2010 its Counsel contends

that Plaintiff raises a wide variety of arguments few of which even remotely

address the operative question at issue; and to wit Defendants' Counsel in

the Reply alleges the search was reasonable accordingly and is somehow

not a further mis-statement in support of a fraud upon the court, says:

    a. "Defendants have appropriately responded to Plaintiff's requests.
       See Pl.'s Opp'n [Dkt. #39], Suppl. Strunk Decl. [Dkt. #41], 2nd
       Suppl. Strunk Decl. [Dkt. #40]. "

    b. "In searching for passport applications filed by Ms. Dunham, State
       could not locate the 1965 passport application that was identified
       separately in another document released to Plaintiff.

    c. "Plaintiff's Response made wide-ranging theories that fail to address
       the sole operative question regarding this putative document:
       whether State's search was reasonable."

    d. Defendants FOIA search was reasonable *"because there are no
       genuine issues in dispute,"*

  3. Plaintiff petitions for Surreply based upon:

    a. Defendants' counsel reference to the new issue raised in regards to

the characterization of a "*Cable*" without further evidence submitted
by the Declaration of Alex Galovich, the Acting Director of the Office
of Information Programs and Services ("IPS") at State in support of
the Summary Judgment;

b. That were the record(s) destroyed as Defendants allege there was
no evidence presented to support that allegation, not one **SF-1**

15 (Disposition of Federal Records) or SF-135's (Records
Transmittal and Receipt) has been produced by the defense in
this case;

c. Defendant, referring to Plaintiff's own filing(s) and, more specifically
citing the Affidavit of Philip Hans Jacobsen affirmed August 5, 2010
shown as Exhibit 1 in Plaintiff's August 8, 2010 Declaration quotes
@ ¶ 5:

> "Jacobsen Aff. [Dkt. #41-21 at 120 (observing that State
> maintains "some passport application records created between
> 1962 and 1978")."

4.  Further, that Plaintiff objects to Defendants' Counsel Reply with
additional defenses that further the mis-statement in support of a fraud
upon the court:

a. Defendants' Counsel cavalier disparagement of Plaintiff who
references the ongoing acts of treason by Barack Hussein Obama

(BHO) in a wide ranging conspiracy directly associated with this FOIA that now includes the Barack Hussein Obama's actions to provide amnesty by executive order for no less than 20 million Illegal Aliens to unconstitutionally usurp Congressional plenary power with Article 1 Section 8 to establish uniform rules of Naturalization; and that somehow, Defendants' Counsel infers that Plaintiff has a diminished capacity and is not entitled to the expectation of honest services from the government as if  Plaintiff's specific circumstances requiring a reasonable FOIA response were too general, frivolous and do not rise to the level of the public good;

b. That somehow Defendants should be exonerated for a spoliation fraud upon the court based upon the unproven habit of DOS document destruction supposedly caused by a GSA "*cable*" sent without even a wet signature directive of an agency and without the authority to have DOS arbitrarily destroy public documents supposedly without even a chain of custody record of its existence as to an unspecified class of private individuals as if according to the DOS fiduciary responsibility over document control and safety; and

c. Further, Defendants oppose a Plaintiff opportunity for a second amended complaint for records from 1942 thru 1995 for Stanley Ann

Dunham et al. (SAD) that somehow would not be important as to

whether or not the minor SAD was included on her own parents

passports or had her own passport as a youth before 1954 as it

appears BHO may or may not have been issued under the 1952

McCarran Walter Act; for BHO is clearly was not a natural born

citizen (NBC) at birth (as his legal parents were unable to transmit

U.S. Citizenship at birth even were he born in Hawaii) is a British

subject at birth through his legal father BHO Senior of majority age

there in Hawaii on a student visa from Kenya;

5. That without addressing Plaintiff's allegation of the DOS fraud upon

the court in the matter of spoliation of critical documents that is central to

this FOIA specifically, as to when the first passport was issued to SAD,

Defendants' Counsel's Reply Argument section acknowledges Plaintiff's

parallel document handling comparison and destruction contentions that

legitimately relate to Defendants' less than reasonable response(s) to

Plaintiff's FOIA requests assert:

> "that State could not have failed to locate the *putative* 1965 Dunham
> passport application, because other individuals have obtained
> passport applications submitted during time periods that "*generally*
> coincide with the same time frame of Plaintiffs FOIA requested of
> Stanley Ann Dunham with Barack Hussein Obama also named on
> those documents too," Pl.'s Mem. in Supp. of Opp'n [Dkt. #39-1 (pp.
> 80-83)] at 2; " (Emphasis by Plaintiff) and

"that State could not have discarded the putative passport application because GSA did not, Plaintiff contends, provide directives to State authorizing such destruction, 2nd Suppl. Strunk Decl. [Dkt. #40]."

6. That in their Reply Defendants offer no additional proof supporting Defendants' contention that there was even a selective destruction of the actual document, refuses to show the actual DOS chain of custody for that record disposition of the actual document(s); to the contrary in support of the putative GSA directive to putatively destroy documents did attribute the phrase with the word cable "As set forth in a *cable* attached" to Galovich's Declaration that even attempts to deny existence of the actual missing "*putative*" 1965 document evidence even though the certified document record references and is the actual document now in DOS custody, Plaintiff contends requires a follow-up affidavit to Defendants' Counsel's naked disingenuousness in so doing, when contending that:

"Plaintiff's assertions are misguided on two basic levels. The first is that they are factually incorrect. The second (and more important) is that they are irrelevant."

7. As a necessary formality Plaintiff's understanding of various terms germane to Defendants' Counsel's use are defined by *Black's Law Dictionary* in regards to:

a. *Putative*: reputed; believed; supposed.

b. *Reasonable*: Fair, proper or moderate *under the circumstances.*

c. *Due diligence*: (1) The care and attention required by the circumstances to satisfy a legal requirement or discharge an obligation. -Also termed reasonable diligence.

d. *Due process*: The conduct of legal proceeding, according to the rules and principles established in the systems of jurisprudence for the protection and enforcement of private rights, including notice and the right to a fair hearing before a tribunal with the power to decide the case.

8. Plaintiff standing with FOIA herein is the only available Federal venue to start to seek relief for the injuries caused by the BHO and his agents' actions to deny the 5th Amendment guarantee of due process provision that prohibits the government from unfairly or arbitrarily depriving a person of life, liberty, or property; and that the 9th Amendment provisions that rights listed in the constitution must not be construed in a way that denies or disparages unlisted rights, which are retained by the people as herein applies with the disparagement of Plaintiff by Defendants' Counsel; and further, that the Ninth Amendment is protection against an individual being singled out by government slander, libel innuendo so as to be placed in degraded lower class than the supposed collective majoritarian class; and

9. Defendant's Counsel contends that the normal circumstance of a FOIA suit other than what is expressly requested, precludes discovery per se is not generally done. However, this FOIA Case is not the run of the mill and involves a grave set of National Security issues that rotate around the

person of BHO and his putative family and an ongoing fraud upon this

Court, DOS has maliciously neglected to respond before this case was filed

and to which Plaintiff has expressed objections and asked the court to

recuse with 28 USC 455 to no avail; and as such as necessary formality

Plaintiff's expresses in the context of Defendants' counsel's disparagement

of Plaintiff as defined by *Merriam Webster's Dictionary*:

DISPARAGE. (1): to lower in rank or reputation : <u>degrade</u> (2): to depreciate by indirect means (as invidious comparison) : speak slightingly about - dis·par·age·ment\-ij-mənt\ *noun* - dis·par·ag·er *noun* - dis·par·ag·ing *adjective* - dis·par·ag·ing·ly\-ij-iŋ-lē\ *adverb*.

*Examples of* DISPARAGE: (1) *Voters don't like political advertisements in which opponents* disparage *one another.(2) It's a mistake to* disparage *their achievements. (3) The article* disparaged *polo as a game for the wealthy.*

*Origin of* DISPARAGE: *Middle English, to degrade by marriage below one's class, disparage, from Anglo-French* desparager *to marry below one's class, from* des- *dis-* + parage *equality, lineage, from* per *peer First Known Use: 14th century*

*Related to* DISPARAGE: *Synonyms: <u>bad-mouth</u>, <u>belittle</u>, <u>cry down</u>, <u>denigrate</u>, <u>deprecate</u>, <u>depreciate</u>, <u>derogate</u>, <u>diminish</u>, <u>dis</u> (also <u>diss</u>) [slang], <u>discount</u>, <u>dismiss</u>, <u>decry</u>, <u>kiss off</u>, <u>minimize</u>, <u>play down</u>, <u>poor-mouth</u>, <u>put down</u>, <u>run down</u>, <u>talk down</u>, <u>trash</u>, <u>trash-talk</u>, <u>vilipend</u>, <u>write off</u>.*
Antonyms: <u>acclaim</u>, <u>applaud</u>, <u>exalt</u>, <u>extol</u> (*also* <u>extoll</u>), <u>glorify</u>, <u>laud</u>, <u>magnify</u>, <u>praise</u> Related Words: <u>discommend</u>; <u>abuse</u>, <u>scold</u>; <u>disapprove (of)</u>, <u>dislike</u>; <u>censure</u>, <u>condemn</u>, <u>criticize</u>, <u>denounce</u>, <u>reprehend</u>, <u>reprobate</u>; <u>asperse</u>, <u>defame</u>, <u>malign</u>, <u>rip</u>, <u>slander</u>, <u>slur</u>, <u>traduce</u>, <u>vilify</u>; <u>discredit</u>, <u>disgrace</u>;

Near Antonyms: <u>approve</u>, <u>countenance</u>, <u>endorse</u> (*also* <u>indorse</u>), <u>favor</u>, <u>recommend</u>, <u>sanction</u>; <u>commend</u>, <u>compliment</u>, <u>eulogize</u> ; See Synonym Discussion at <u>decry</u>.

10.     That Defendants' Counsel disparages the circumstance(s) of Plaintiff's FOIA request with Defendant's general use of the term "reasonable" applied to marginalize the specific circumstance(s) of Plaintiff's FOIA and associated complaints to cover the DOS lack of responsiveness, as if Plaintiff were of a class of diminished capacity unworthy to warrant a competent FOIA search, is singled out instead.

11.     If it please the Court, Plaintiff's specific circumstance herein requesting that DOS conduct a reasonable search of records has a very different set of events than any other person's general circumstance(s) in the USA that as the Court is aware, whether unorthodox or not: (i) Plaintiff is the only person in the USA to have duly *fired fired fired* BHO on January 23, 2009 by registered mail (rendering BHO the *USURPER* as Plaintiff is entitled to characterize BHO as) on the grounds that he had not proven himself eligible to be the administrator / trustee of Plaintiff's private account at the U.S. Treasury as required by U.S. Constitution Article 2 Section 1 clause 5 with a pending Replevin matter in the District of Columbia; (ii) further, that the Honorable Justice David I. Schmidt in the NYS Supreme Court Case *Strunk v. Paterson et al.* in the County of Kings with index 08-29642 declined to sign an subpoena order to obtain document records of Stanley Ann Dunham from DOS Defendants, that thereby forced Plaintiff as

the only alternative to obtain the passport records of SAD here in this Court;

(iii) further, that document records are germane to determine where Stanley

Ann Dunham was at the time of  the Usurper's birth as requested in the

FOIA herein; (iv) further, that the requested documents are essential for the

continuation of Plaintiff's action before Justice Schmidt with a First

Amended Complaint filing pending against Barack Hussein Obama [1];

*Obama for America*; *Obama Victory Fund*; Nancy Pelosi; the New York

State Democratic Party Committee; the Working Families Party of New

York State Committee; John Sidney McCain [2]; *McCain Victory 2008*;

---

[1]  the McCarran-Walter Act of 1952 is the controlling legal authority for the birth of BHO, and especially when the transmission of British citizenship to BHO at birth no matter where the location was becomes a dual citizen treaty matter protected under the treaty between Britain and the USA, and that with the admission against interest of both Stanley Ann Dunham  and Barack Hussein Obama Sr. in a marriage in Hawaii entered after conception, in which both parents attribute Paternity to BHO Sr. without challenge at the time of the March 20, 1964 divorce decree makes BHO Jr. a British subject with dual citizenship and multi-allegiances at best that by the 1952 McCarran-Walter Act, BHO Jr. is not a Natural Born Citizen.

[2]  John Sidney McCain was born in Colon Hospital, Colon Panama according to the Panama Canal Health Department not in the Panama Canal Zone, and that according to the Hay-Banau-Varilla Treaty says Colon Panama the birth city cited on McCain's 1936 long form birth certificate (where he was witnessed being born, and where his parents resided, Colon, Republic de Panama), has 26 articles in which the two pertinent to the status of the city of Colon under that Treaty refer to the Convention for the Construction of a Ship Canal (Hay-Bunau-Varilla Treaty), November 18, 1903: ARTICLE I The United States guarantees and will maintain the independence of the Republic of Panama. ARTICLE II The Republic of Panama grants to the United States in perpetuity the use, occupation and control of a zone of land and land under water for the construction maintenance, operation, sanitation and protection of said Canal of the width of ten miles extending to the distance of five miles on each side of the center line of the route of the Canal to be constructed; the said zone beginning in the Caribbean Sea three marine miles from mean low water mark and extending to and across the Isthmus of Panama into the Pacific ocean to a distance of three marine miles from mean low water mark *WITH THE PROVISO THAT THE CITIES OF PANAMA AND COLON and the harbors adjacent to said cities, WHICH ARE INCLUDED WITHIN THE BOUNDARIES OF THE ZONE ABOVE DESCRIBED, SHALL NOT BE INCLUDED WITHIN THIS GRANT...*" McCain is not a Natural Born Citizen, who perjurers his affidavit for ballot access.  (Emphasis by Plaintiff).

*McCain-Palin Victory 2008*; John A . Boehner;  The New York State Republican Party Committee; The Independence Party of New York State Committee; Conservative Party of New York State Committee;  *Joint Fundraising Committees*; Róger Calero [3]; the Socialist Workers Party; New York State Board of Elections; the New York State Secretary of State, the New York State Attorney General Andrew Cuomo individually as an elector and officially; John and Jane Does; inter alia for breach of fiduciary duties under color of state law enacted by the State Legislature to protect Plaintiff's right to a reasonable expectation of  participation and success with a proper ballot for the New York electoral college election of the 2008 president and vice president of the United States of America in accordance with United States Constitution Article 2 Section 1; and (v) furthermore, that as a matter State Court standing Plaintiff's suffrage privilege goes to his specific circumstances and depends upon Plaintiff's substantive due process right to publicly available document records questionably withheld herein as a 5th amendment issue, which goes well beyond simple procedural due process as a minimum requirement as Defendants' Counsel suggests in the use of the term reasonable.

---

[3]   Calero was born in <u>Nicaragua</u> in 1969. He and his family fled via <u>Los Angeles</u>, <u>California</u> in 1985. Calero is now a permanent <u>resident alien</u> (holding a <u>green card</u>) since 1990. While in Los Angeles, Calero joined a socialist movement and helped mobilize support against <u>Proposition 187</u> in the early 90s and is not a Natural Born Citizen. (Emphasis by Plaintiff).

12.      That the FOIA requires a good faith search and that Plaintiff

contends has not been done and is in bad-faith with FOIA involving a

heinous cover-up; and that the cover-up involves the compelling state

interest as a plenary responsibility to provide a legitimate electoral college

vote with the U.S. Constitution Article 2 Section 1 that also involves State

Campaign funding oversight responsibilities and authority over the 2008

presidential candidates and their respective political parties that had formed

a number of so-called joint fundraising committees in the 2008 election to

collectively raise money; and in which Donors write one large check,

usually so they can attend an event headlined by the candidate, and the

money then is divided according to pre-determined portions and

contribution limits. In a frequent scenario, the contributor makes a five-

figure donation. The candidate takes a share--often the maximum allowed

per individual donor, the national party takes a cut and the remainder split

among state parties. Donors to joint fundraising committees, or JFCs, are

among the biggest fish in political fundraising.

13.      That because it seems that employees / agents of the DOS are

reluctant in the matter of the Defendants' Counsel's Reply and previously

seem unwilling to produce any affidavit affirmed before a government

notary official, that in itself goes to bad faith in the putative search and

production of documents as a continuation of the fraud upon this court.

14.      That Plaintiff contacted Philip Hans Jacobsen, whose Affidavit affirmed August 5, 2010 is shown as Exhibit 1 annexed to Plaintiff's Declaration of August 8, 2010, to confirm Plaintiff's contention and amazement at the DOS action(s) in this FOIA case, and that on August 21, 2010  Mr. Jacobsen affirmed his analysis with which Plaintiff agrees does apply to Defendant's mischievous mis-use of the earlier Affidavit and that Mr. Jacobsen as Plaintiff's expert is in good faith to aid this Court in a decision herein as to whether or not use of *reasonable* as alleged applies to the DOS search per se (see the annexed **Jacobsen Affidavit** ).

**Wherefore**, Plaintiff wishes that the attached proposed order grant permission to file this Declaration with the Affidavit of Philip Hans Jacobsen annexed thereto along with the Surreply Memorandum of Law with the Court in support of the relief requested by Plaintiff as of August 26, 2010, along with such other and different relief the court deems necessary.

Dated: September 22, 2010
Albemarle County Virginia

Christopher-Earl: Strunk in esse
593 Vanderbilt Avenue #281
Brooklyn New York 11238
(845) 901-6767
Email: chris@strunk.ws

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
-----------------------------------------------x
                                               )
Christopher-Earl: Strunk © in esse,            )
593 Vanderbilt Ave. - 281 Brooklyn 11238       )
                                               )
                        Plaintiff,             )
                                               )
v.                                             )      Civil Action No.: 08-2234 (RJL)
                                               )
U.S. DEPARTMENT OF STATE, et al.)
                                               )
                        Defendants.  )
                                               )
-----------------------------------------------x
```

## AFFIDAVIT of Philip Hans Jacobsen

STATE OF CALIFORNIA )
                    ) ss.
COUNTY OF SAN DIEGO )

I, **Philip Hans Jacobsen**, being duly sworn, depose and say under

penalty of perjury:

1.  I am over 18 years of age, not a party herein, and located for service

at 1158 Thalia Street, San Diego, CA 92154; Phone (619) 424-3385.

2.  Affiant is a Natural Born Citizen of the United States of America.

3.  Affiant is a Private Investigator licensed by the State of California,

California State License #PI15945, and has been so licensed since 1992.

4.  Affiant is also a retired Senior Border Patrol Agent, Immigration &

Naturalization Service, U.S. Department of Justice.

5.    Plaintiff requests that Affiant make this affidavit in response to the

Reply Memorandum of Law in Support of Defendants' Motion for Summary

Judgment by Brigham J. Bowen, United States Attorney, dated September

16, 2010.

6.    Affiant believes as a sworn witness in this case and former sworn

law enforcement officer of the United States that Affiant is duty bound if not

legally required to bring to the immediate attention of the Court egregious

bad faith conduct by Defendant in their Reply memorandum. Affiant also

believes in the interest of Justice, the deception by Defendant's agents

(hereinafter "Defendant") necessitates the clarification and further

explanation of Affiant's previously submitted affidavit.

7.    Defendant, referring to Plaintiff's own filing(s) and, more

specifically citing this Affiant's previous Affidavit quotes @ ¶ 5:

> "Jacobsen Aff. [Dkt. #41-2] at ¶ 20 (observing that State
> maintains "some passport application records created between
> 1962 and 1978")(emphasis added)."

8.    Defendant(s), at the time this entry was made, knew, or should have

known, that it was a misquote, and that it would result in a statement likely

to mislead the court. Defendant(s) further had the hubris to add emphasis

to the misquote.  The quote correctly reads, in its entirety, the following:

> "the State Department maintains an electronic index of all
> passport application records created since 1978, and some
> passport application records created between 1962 and 1978."

9.  The wording deleted from the beginning of the quotation completely

changes the meaning of the quote and makes it appear that DOS has only

some passport application records created between 1962 and 1978 when

the full quote actually refers to the electronic index. Defendant's agents

should be looking at the actual <u>paper</u> records index, where the information

for passports issued from 1909 to 1978, inclusive of the time period of the

documents requested under this FOIA action, will reasonably be found.

10.  Defendant further attempts to obfuscate the issue and the court by

stating:

> "It therefore should not surprise anyone that State might locate
> some, but not all, applications submitted by a single individual
> over the course of decades."

11.    In fact, in light of published U.S. Department of State Records

Schedule, Chapter 13, Records Disposition Schedules and the DOS

website as previously identified in the Jacobsen's Affidavit dated August 5,

2010 @ ¶ 16, what actually is surprising is that the records sought cannot

be found.

12.    Defendant goes to great length to claim "numerous" searches were

conducted in the PIERS system when defendant knew, or should have

known, that the PIERS system records retention began in 1978 and

contains only "some" records from previous years. Therefore, PIERS would

have been one of the least likely of all DOS records system(s) to produce

any results for records prior to 1978.

13.     Defendant also claims to have conducted "numerous searches of

paper records" but fails to identify any of the records searched or even if

any of the paper indices were searched.

14.     In conflict with Defendant's claim(s) of numerous searches of all

records, it is known that Stanley Ann Dunham applied for and received a

passport in 1965 yet  according to Galovich's Declaration ¶15 :

> "No record of a 1965 passport application referenced
> in an application for amendment of passport in the name of Stanley
> Ann Dunham was located as noted in paragraph 12 above."

According to DOS Records Schedule previously entered into evidence by

Affiant and entitled Passport Authorization Sheets or Records  further

identified as,

> "b. Index Cards.  Arranged alphabetically. Master index to
> issuance's 1909 through 1978 (paper records) Contains index
> cards with information on passport issuance, registration,
> consular reports of birth, and other information."

An index record of a passport issued in 1965 would confirm the existence of

an application around that time, so it is hard to believe that Mr. Galovich

would consider there to be "no record" of the application if he had seen index data for the 1965 passport itself. If the index record itself was missing, that should have led to further inquiry regarding why it was missing. Taken together with Mr. Galovich's failure to mention that he had looked in the index, it seems unlikely that he did.  A passport application like my mother's applications includes the date of issue. Is that also not a record of a passport application? The absence of further description by Defendant is perplexing to say the least.  Defendant does not claim to have searched any paper indices reasonably expected to expose the issuance of a 1965, or earlier, passport.

15.     In Defendant's moving papers a document, most recently described as a "cable," was referenced. This unsigned document is of unknown provenance and, to the best of Affiant's knowledge, has never been authenticated.

16.     In reviewing Mr. Galovich's Declaration, Affiant has strong questions and concerns about its contents. Mr. Galovich is the Acting Director of the IPS which processes FOIA's, and has been employed by DOS since 1974. If the "destruction" is to be believed, surely he must have run into or been aware of numerous similar requests where documents were not located that necessitated DOS standardized "boiler plate" responses claiming like

or similar destruction numbering in the hundreds, if not thousands, over the years. From my reading of the GAO 1981 review of DOS Passport Services, I have estimated that the number of requests for passport applications older than 5 years was approximately 5,000 per year (15% of 34,000) in 1979. Therefore, DOS, before implementing this "project," knew they would have hundreds if not thousands of requests each year for destroyed records. It is unconscionable that they did not put in place both a mechanism to prevent ordering the records and have in place a proper response when a request was received for such destroyed records. In Defendant's effort to show that they made a reasonable search for records, they located one 1980's document, which purports to describe an "unnamed" project, which had over 40 employees, was located away from main offices, likely cost hundreds of thousands of dollars and resulted in the separation of millions of files and destruction of potentially millions of passport applications.

17.    DOS wants Plaintiff, this court and millions of Americans to believe that they instituted an "unnamed" project of this magnitude and importance and there is only one scrap of unsigned paper and no witnesses willing to memorialize and testify to this historic "purge".

18.    A closer look at Mr. Galovich's Declaration (p12) makes it appear to

me that Defendant is sidestepping the "cable" and  disowns any knowledge

of it through his failure to authenticate it. He merely states,

> "Plaintiff was advised in that letter (Rolbin letter of
> 7/29/2010 - Exhibit 6) that Passport Services did not locate
> a 1965 passport application referenced in an application
> for amendment of passport. The Department concluded it
> was likely destroyed as part of a records disposition
> project in the 1980's in which routine passport applications
> and other non-vital records from 1925-1968 were
> destroyed in accordance with continued requests from the
> General Services Administration to reduce the amount of
> space used to store routine passport records and other
> non-vital records (exhibit 7)."

19.    It appears that neither Galovich nor Rolbin are willing to verify the

authenticity of this "cable" and appear to be tossing it back and forth like a

"hot potato."

20.    Defendant alleges that many documents were destroyed by the

purported purge, yet they found two documents that appear to me as the

type that should have been destroyed during that purge. They were

somehow miraculously able to produce them.  DOS's own evidence proves

that the records were not destroyed. Those two documents are: the 1967

amendment of passport application by Stanley Ann Dunham; and the 1968

renewal of passport by Stanley Ann Dunham Soetoro. It brings one to

wonder how these two documents escaped destruction and were able to be

found, but as claimed by Defendant, the more important 1965 Passport

Application was somehow destroyed.

21.    Based upon Affiant's knowledge, experience and time employed by
the federal government Affiant finds it irreconcilable that such a large and
significant project is and has remained obscure, unnamed, undocumented
and unknown until this instant FOIA request. DOS has had over a month
since Plaintiff asked DOS for documentation of the alleged passport
records destruction, (8/9/2010). Surely, Defendant has had time to get
someone, anyone, out of a pool of over 20,000 current employees and tens
of thousands of retired employees to testify about the project. And, if this is
not enough, not one SF-115 (Disposition of Federal Records) or SF-135's
(Records Transmittal and Receipt) has been produced by the defense in
this case.

//

//

//

//

//

//

//

//

22.    Defendant's silence on all pertinent matters is deafening, and based upon my knowledge and experience and the totality of circumstances it appears that DOS has chosen to cherry-pick the documents.

23.    I do solemnly swear under penalty of perjury of the State of California this date September 21, 2010 in the County of San Diego, State of California that the facts and circumstances described above are true and correct to the best of my knowledge.

Philip Hans Jacobsen

Sworn to before me
This 2( day of September 2010

Notary Public

OFFICIAL SEAL
DONALD M. SWANSON
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1869052
SAN DIEGO COUNTY
MY COMM. EXP. NOV. 11, 2013

U.S. District Court for the District of Columbia

**Strunk v DOS et al.** DCD 08-cv-2234 (RJL)

## CERTIFICATE OF SERVICE

On September 23, 2010, I, Christopher Earl Strunk, under penalty of perjury

pursuant to 28 USC 1746, caused the service of a copy of the **Plaintiff's**

**Notice of Motion for Permission to file a Surreply with the Declaration in**

**support** signed September 22, 2010 with the **Affidavit of Philip Hans Jacobsen**

affirmed September 21, 2010 annexed, and **Plaintiff's Surreply Memorandum**

**of Law** endorsed September 22, 2010 thereto that as a complete set was

placed in a sealed folder properly addressed with proper postage served by

USPS mail upon:


Brigham J. Bowen
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044

I do declare and certify under penalty of perjury:

Dated:  September 23, 2010
        Washington D.C.

Christopher-Earl: Strunk in esse
593 Vanderbilt Avenue #281
Brooklyn New York 11238
(845) 901-6767 Email: chris@strunk.ws