# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHRISTOPHER EARL STRUNK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-2234 (RJL) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF STATE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

March ___, 2011

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, seeking information from the United States Departments of State ("DOS") and Homeland Security ("DHS") about Stanley Ann Dunham, President Obama's deceased mother. This matter is before the Court on defendants' motion for summary judgment, and for the reasons discussed below, the motion will be granted in part and denied in part without prejudice.[1]

## I. BACKGROUND

### A. FOIA Requests to the State Department

#### 1. Request No. 200806553

Plaintiff submitted a FOIA request to the DOS, Am. Compl. ¶ 12, seeking the following:

---

[1] The Court will grant defendants' motion for summary judgment with respect to the DOS's response to plaintiff's FOIA request, and plaintiff's "Notice of Motion for an Order of the Department of State to Release the FOIA Requested Information of Stanley-Ann Dunham" will be denied.

> [I]nformation or records related to Stanley Ann Dunham born
> November 29, 1942 at Fort Leavenworth KS. U.S., a.k.a. Stanley Ann
> Dunham Obama . . . who died on November 7, 1995 under the name
> Stanley Ann Dunham Soetoro (a.k.a. Sutoro) for any and or all exit
> and entry records for travel outside of the USA for the period between
> 1960 through 1963.

*Id.*, Ex. A (Letter to the DOS from plaintiff dated October 16, 2008).  The DOS assigned the

request a control number, Request No. 200806553, and notified plaintiff that this information

likely would be maintained by the Bureau of Customs and Border Protection ("CBP"), a

component of the DHS.  Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Mem."),

Decl. of Alex Galovich ("Galovich Decl.") ¶ 5.  The DOS provided plaintiff the address to which

he could submit a FOIA request directly to the CBP, and closed the matter.  *Id.*, Ex. 2 (Letter to

plaintiff from Patrick Scholl, Chief, Requester Communications Branch, DOS, dated January 12,

2009).

2. Request No. 200807238

Plaintiff submitted a separate request "electronic[ally] via the [State] Department's FOIA

website," Galovich Decl. ¶ 6, for the following:

> [D]ocuments on . . . Stanley Ann Dunham, a/k/a Ann Dunham a/k/a
> Stanley Ann Obama a/k/a Ann Obama a/k/a Stanley Ann Soetoro
> a/k/a Ann Soetoro a/k/a Stanley Ann Sutoro a/k/a Ann Sutoro a/k/a
> Stanley Ann Dunham Obama a/k/a Ann Dunham Obama, born
> November 28, 1942 at Fort Leavenworth KS U.S., a.k.a. Stanley Ann
> Dunham Obama and who died on November 7, 1995 under the name
> Stanley Ann Dunham Soetoro (a.k.a. Sutoro)

Am. Compl., Ex. E (FOIA request dated November 22, 2008, Ref. No. B8475).[2]  Specifically,

---

[2]      The Court already has resolved the portion of plaintiff's FOIA request for records
pertaining to then-President-Elect Barack Obama. *See Strunk v. U.S. Dep't of State*, 693 F. Supp.
2d 112 (D.D.C. 2010).

2

plaintiff sought:

a.   applications for a U.S. Passport;

b.   entry and exit passport Records pertaining to the United States and Kenya from January 1, 1960 to December 31, 1975 and from January 1, 1979 to December 31, 2005;

c.   entry and exit passport records pertaining to the United States and Indonesia from January 1, 1960 to December 31, 1973, and from January 1, 1979 to December 31, 1985;

d.   travel records . . . on a U.S. passport, Kenyan passport, Indonesian passport, or any other foreign passport or visa;

e.   foreign birth certificate registered or filed with the U.S. Embassy in Kenya or Indonesia for Barack H. Obama;

f.   foreign birth registry filed by Stanley Ann Dunham with the U.S. Embassy in Kenya or Indonesia for Barack H. Obama; and

g.   adoption records or other government records acknowledging Barack H. Obama as Lolo Soetoro's son.

*See id.* at 1. "[A]n automated response acknowledging and summarizing Plaintiff's request was E-mailed to [him]." Galovich Decl. ¶ 7; *see id.*, Ex. 3 (E-mail message to plaintiff dated November 22, 2008).

Acknowledging that Ms. Dunham "is widely known as a matter of public record to be deceased," Galovich Decl. ¶ 9, the DOS "process[ed] the request for records in category (a) of [plaintiff's FOIA] request under . . . control number 200807238." *Id.*; *see id.*, Ex. 5 (Letter to plaintiff from P. Scholl dated January 12, 2009) at 1-2. A search of records maintained by the Office of Passport Services located six documents, all of which were released to plaintiff in full. *Id.* ¶ 12. The "other aspects of his FOIA request were assigned case control number 200807272." *Id.* ¶ 10. Records responsive to categories (b), (c), and (d) of plaintiff's request "would be with the [DHS's] Bureau of Customs and Border Protection or with the National Archives," and the DOS provided plaintiff with addresses of those agencies. *Id.*

*B.  FOIA Request to the Department of Homeland Security*

In a separate FOIA request to CBP, *see* Am. Compl. ¶ 22, plaintiff sought the same

information as that listed in his request to the DOS, *id.*, Ex. I (Letter to Mark Hanson, Director,

FOIA Division, CBP, from plaintiff dated December 23, 2008) at 1-2.  A search of the TECS

electronic database yielded "[o]ne page of responsive records for Stanley Ann Dunham."  Defs.'

Mem., Decl. of Dorothy Pullo ("Pullo Decl.") ¶ 6.  After redacting certain information under

FOIA Exemptions 2 and 7(E), the CBP released the document to plaintiff.  *Id.* ¶ 7; *see id.*, Ex. A

(Letter to plaintiff from M. Hanson dated February 3, 2009).

## II.  DISCUSSION

*A.  Summary Judgment in a FOIA Case*

"[T]he court may . . . grant summary judgment if the motion and supporting materials –

including the facts considered undisputed – show that the movant is entitled to it."  FED. R. CIV.

P. 56(e).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[A] material fact is 'genuine'

. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"

on an element of the claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Factual

assertions in the moving party's affidavits or declarations may be accepted as true unless the

opposing party submits his own affidavits, declarations or documentary evidence to the contrary.

*Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based solely on information

provided in an agency's affidavits or declarations if they are relatively detailed and when they

describe "the documents and the justifications for nondisclosure with reasonably specific detail,

4

demonstrate that the information withheld logically falls within the claimed exemption, and are

not controverted by either contrary evidence in the record nor by evidence of agency bad faith."

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  Such affidavits or

declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely

speculative claims about the existence and discoverability of other documents.'"  *SafeCard*

*Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground*

*Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B.  Searches for Records Responsive to Plaintiff's FOIA Requests

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material

doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  *Valencia-*

*Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of*

*State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27

(D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to

produce requested information).  The agency bears the burden of showing that its search was

calculated to uncover all relevant documents.  *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548,

551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that

explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684

F.2d 121, 126 (D.C. Cir. 1982).  In the absence of contrary evidence, such affidavits or

declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127.  If

the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the

agency is not proper."  *Truitt*, 897 F.2d at 542.

5

1.  State Department

The DOS's Office of Information Programs and Services ("IPS") responds to FOIA

requests. Galovich Decl. ¶¶ 1-2. Upon receipt of a FOIA request, IPS staff "evaluate[] the

request and determine[] which offices, overseas posts, or other records systems . . . may

reasonably be expected to contain" responsive records. *Id.* ¶ 13. The "description of the records

requested . . . [and] the nature, scope, and complexity of the request" are considered in

determining whether or where responsive records might be maintained. *Id.*

With respect to plaintiff's Request No. 200807238 for Ms. Dunham's passport

applications, IPS staff "determined that the Office of Passport Services would be the only office

that would reasonably be expected to maintain the records requested" because "Passport Services

is charged with issuing passports to U.S. citizens." *Id.* ¶ 14. Its Passport Information Electronic

Records System ("PIERS") is an electronic database containing "the records of some 144 million

passports that have been issued from 1978 to the present." *Id.* The DOS "also maintains paper

records of some passport applications." *Id.* Using variations of Ms. Dunham's name, including

those variations plaintiff supplied in his FOIA request, IPS staff searched both PIERS and paper

records. *Id.* ¶ 15. The search yielded six responsive passport records, *id.*, all of which were

released to plaintiff in full, *id.*, Ex. J (Letter to plaintiff from Jonathan M. Rolbin, Director,

Office of Legal Affairs and Law Enforcement Liaison, Bureau of Consular Affairs, Passport

Services, dated July 29, 2010). The records themselves were not submitted with the agency's

declaration.[3]  However, the DOS's response to plaintiff's FOIA request indicated that "a 1965

---

[3]      It appears that the DOS released 12 pages of records, copies of which plaintiff
submits in his opposition as attachments to the Jacobsen Affidavit. *See* Pl.'s Decl. in Opp'n to
(continued...)

passport application referenced in an application for amendment of passport that is included in the released documents" was not located, likely because "[m]any passport applications . . . from that period were destroyed during the 1980s in accordance with guidance from the General Services Administration." *Id.*, Ex. J at 1. In addition, it was explained that "passport records typically consist of applications for United States passports and supporting evidence of United States citizenship," and therefore they "do not include evidence of travel such as entrance/exit stamps, visas, residence permits, etc., since this information is entered into the passport book after issuance." Galovich Decl. ¶ 12; *see id.*, Ex. J at 1.

Plaintiff responds with the affidavit of Philip Hans Jacobsen, whose FOIA request for passport records about his deceased mother "dated from May 26, 1953 through October 28, 1985 . . . generally coincide[s] with the same time frame of Plaintiff[']s request[] of Stanley Ann Dunham." Pl.'s Decl. in Opp'n to Def.'s Mot. for Summ. J. to Dismiss [Dkt. #39] (" Strunk Decl.") ¶ 4; *see id.*, Ex. 1 (Jacobsen Aff.) ¶¶ 8-10. The DOS apparently searched records "from 1945 to present" and located five documents pertaining to Mr. Jacobsen's mother, including passport applications from 1953, 1956, 1957 and 1985, and applications for amendment of a passport from 1957. *Id.*, Jacobsen Aff., Ex. B (Letter from Marionette Pleasant, Team Leader, Law Enforcement Liaison Division, Office of Legal Affairs, Passport Services, dated January 25, 2010). From Mr. Jacobsen's review of the DOS and the National Archives and Records Administration websites and the Federal Register, *see* Jacobsen Aff. ¶¶ 16-19, he concludes that "the U.S. Government either at the DOS, or the . . . Washington National Records Center,

---

[3](...continued)
Def.'s Mot. for Summ. J. to Dismiss [Dkt. #39], Ex. 1 (Jacobsen Aff. and Letter to plaintiff from J.M. Rolbin dated July 29, 2010 with attachments).

7

Suitland, Maryland[,] must maintain passport applications and related records for 100 years," *id.*
¶ 21. Mr. Jacobsen further concludes that the government maintains paper records of passport
issuances from 1909 to 1978, and "an electronic index of all passport application records created
since 1978 and some passport application records from 1962 to 1978." *Id.*

Relying on this affidavit, plaintiff contends that Mr. Jacobsen's success in obtaining
records about his mother, which had been generated during the same time period as Ms.
Dunham's records, "conflicts with the [DOS's] allegations and partial provision of records."
Strunk Decl. ¶ 9. According to plaintiff, defendants' agents "have not made a good faith effort to
search for and disclose records" responsive to his request and "have spoliated records associated
with the commission of high crimes and misdemeanors" committed by Barack Hussein Obama
and others, resulting in Obama's "having taken the oath of office to uphold the U.S. Constitution
and protect the [U]nited States of America and the People against all enemies foreign or
domestic . . . who at birth has multiple allegiances simultaneously to Great Britain and Kenya . . .
and . . . is an Indonesian Citizen." *Id.* ¶ 2.

Next, plaintiff attacks the DOS's suggestion that responsive records may have been
destroyed pursuant to a GSA directive. Plaintiff notes that the DOS provided no authority for the
alleged destruction of responsive records, an index or chain of custody for such documents, or
confirmation that such documents were indeed destroyed. Strunk Decl. ¶¶ 10, 30; *see generally*
Pl.'s Second Supp. Decl. in Opp'n to Def.'s Mot. for Summ. J. to Dismiss [Dkt. #40]; *see id.*, Ex.
11 (Richardson Aff.) ¶¶ 15, 18. In support of his argument, plaintiff submits the declaration of
William A. Richardson, who describes himself as "a business system quality manager." *Id.*,
Richardson Aff. ¶ 3. According to Mr. Richardson, "the GSA has Never, Ever, issued a directive

8

to the [DOS] on record retentions to US citizens." *Id.* ¶ 15.[4]  Based on Mr. Richardson's

findings, plaintiff contends that individuals conspired to "break[] . . . into the [DOS's] passport

database to effect spoliation of documents in criminal violation of law," Strunk Decl. ¶ 14, such

that government officials are "withhold[ing] facts essential . . . for proving that [Obama] is not a

natural-born citizen [of the United States]," *id.* ¶ 18.[5]  Further, plaintiff accuses the DOS of

"being disingenuous with the Court in bad faith," *id.* ¶ 29, and he "will not believe the records

were somehow eaten by the dog without the DOS provision of proof that the GSA backed up a

forklift to put them into a dumpster," *id.* ¶ 30.

Plaintiff's opinion and speculation as to the existence or wrongful destruction of

responsive records are not relevant considerations in this FOIA action.  "The adequacy of an

agency's search is measured by a standard of reasonableness, and is dependent upon the

circumstances of the case." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir.

1983) (internal citations and quotation marks omitted).  It is "determined not by the fruits of the

search, but by the appropriateness of the methods used to carry out the search." *Iturralde v.*

*Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing *Steinberg*, 23 F.3d at 551).

---

[4]      It appears that one page of Mr. Richardson's affidavit, which presumably sets
forth paragraphs 8 through 13, is missing.

[5]      Plaintiff also recounts the efforts of another FOIA requester who sought Ms.
Dunham's passport records for the period from January 1, 1959 through December 31, 1962, and
the denial of her request for expeditious handling of the request. Pl.'s Supp. Decl. in Opp'n to
Def.'s Mot. for Summ. J. to Dismiss [Dkt. #41] ¶ 3. Apparently plaintiff believes that
expeditious handling of that individual's request is essential because Obama's presidency is itself
a "grave matter of national security." *Id.* ¶ 2. Indeed, he claims that Ms. Dunham's
"whereabouts . . . is crucial as a matter of law," because it determines whether President Obama
is a United States citizen. *Id.* ¶ 26.

"The [mere] fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 391 (D.C. Cir.) (citations omitted), *cert. denied*, 552 U.S. 1007 (2007). Plaintiff's "assertion that an adequate search would have yielded more documents is mere speculation." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).

The DOS establishes that it looked for responsive records in the systems of records most likely to contain Ms. Dunham's passport applications, using several variations of the subject's name as search terms, for the time period set forth in plaintiff's request. Its failure to locate a document to which another responsive record referred does not render its search inadequate. No agency is required to produce records that it does not possess. *See Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40 (D.D.C. 1998) (concluding that plaintiff who identified two responsive documents which may be in the agency's possession but were not released merely "demonstrates that the government's search was not perfect," however "[p]erfection . . . is not the standard"); *Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 249 (6th Cir. 1994) (finding that the court cannot order an agency "to make amends for any documents destroyed prior to the request").

The Court concludes that the DOS has conducted a reasonable and adequate search for responsive records, notwithstanding the agency's lack of success in locating the particular documents plaintiff sought. Accordingly, defendants' motion will be granted in part with respect to plaintiff's FOIA request to the DOS.

2. Customs and Border Protection

The CBP uses the TECS electronic database to "conduct enforcement checks on individuals seeking to enter or depart the United States." Defs.' Mem., Pullo Decl. ¶ 6. "TECS

includes combined databases of over 20 federal agencies," and since January 1982, TECS has captured "traveler arrivals and departures into and out of the United States." *Id.* Paper records predating TECS "no longer exist and are no longer archived." *Id.*

Because TECS maintains arrival and departure records, it was considered "the system . . . mostly likely to have entry and exit data pertaining to Ms. Dunham." *Id.* "Working with the CBP Office of Chief Counsel, the FOIA Division conducted a search in the TECS database," and that search yielded "[o]ne page of responsive records for Stanley Ann Dunham." *Id.* This cursory description of the CBP's search provides no basis from which the Court can determine whether the search was adequate under the circumstances. *See Schoenman v. Fed. Bureau of Investigation*, No. 04-2202, 2009 WL 763065, at *15 (D.D.C. Mar. 19, 2009) (finding that agency's search was inadequate where the declarant "fails to include sufficient reasonable detail as to the specific search conducted in response to Plaintiff's FOIA[] Request"); *Prison Legal News v. Lappin*, 603 F. Supp. 2d 124, 126-27 (D.D.C. 2009) (noting supporting affidavit's failure to "outline the search methods undertaken . . ., who would have conducted the searches, and . . . how [the affiant] is personally aware of the search procedures or that he knows they were followed by each of the [Federal Bureau of Prisons']s entities tasked with responding to this request"). Accordingly, the defendants' motion will be denied in part without prejudice, and the Court will set a schedule for the filing of a renewed motion. *See McKinley v. Fed. Deposit Ins. Corp.*, No. 10-420, 2010 WL 5209337 (D.D.C. Dec. 23, 2010) (inviting the agency to "either (1) conduct a new search (or searches) for the records sought by the plaintiff to ensure the search is adequate consistent with governing caselaw; or (2) provide the Court with declarations from which the Court can find that the declarants have personal knowledge that the search

11

methodology, procedures, and searches actually conducted were reasonably designed to locate documents responsive to plaintiff's requests").

## III. CONCLUSION

The State Department has demonstrated its full compliance with the FOIA. Its declarant describes a search for records responsive to plaintiff's FOIA request that was reasonable under the circumstances, and that the records it located have been released to plaintiff in full. Plaintiff's speculation as to the existence of additional records and collusion or bad faith among government officials to wrongfully withhold or destroy responsive records is not sufficient to rebut the presumption of good faith accorded to DOS's supporting declaration. For these reasons, the defendants' motion for summary judgment is GRANTED IN PART. However, because the CBP has not demonstrated that its search for responsive records was adequate, defendants' motion will be DENIED IN PART without prejudice. The Court defers consideration of the CBP's decision to withhold records under Exemptions 2 and 7(E) and segregability. An Order is issued separately.

RICHARD J. LEON
United States District Judge

DATE:

3/15/11

12