# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER EARL STRUNK, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:08-CV-02234 (RJL) |
| ) | |
| U.S. DEPARTMENT OF STATE, ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| ) | |
|     Defendants. ) | |
| ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the federal Rules of Civil Procedure, Defendant U.S. Department of Homeland Security ("DHS") respectfully moves for summary judgment.

By this Freedom of Information Act ("FOIA") action, *pro se* Plaintiff Christopher Strunk seeks passport and travel records relating to President Barack Obama and his mother, Stanley Ann Dunham, from Defendants. The Court has previously dismissed all claims relating to records concerning the President, leaving only the requests for records concerning Ms. Dunham at issue. March 16, 2010 Order [Dkt. #31]. The Court also has dismissed all claims against the Department of State, leaving only one request to U.S. Customs and Border Protection ("CBP") at issue. March 10, 2011 Order [Dkt. #48]. CBP has completed processing of this request and has released a single document to Plaintiff, subject to appropriate withholdings under FOIA. Accordingly, because CBP has appropriately responded to Plaintiff's request, and because there are no genuine issues in dispute, DHS is entitled to judgment in its favor as a matter of law. The reasons supporting this motion are set forth in the accompanying memorandum in support. A statement of material facts as to which there is no genuine issue and a proposed order are also

attached for the Court's consideration.

Dated: April 29, 2011                    Respectfully submitted,

                                         TONY WEST
                                         Assistant Attorney General

                                         RONALD C. MACHEN, JR.
                                         United States Attorney

                                         ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                         Deputy Branch Director

                                         _____s/ Brigham J. Bowen_____
                                         BRIGHAM J. BOWEN (D.C. Bar No. 981555)
                                         Civil Division, U.S. Department of Justice
                                         Federal Programs Branch
                                         P.O. Box 883, 20 Massachusetts Ave., N.W.
                                         Washington, D.C. 20044
                                         Ph.    (202) 514-6289
                                         Fax    (202) 616-8470
                                         brigham.bowen@usdoj.gov

                                         *Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 29th day of April, 2011, I caused a true and correct

copy of the foregoing motion to be served upon Plaintiff by first class United States mail,

postage prepaid marked for delivery to:

**Christopher E. Strunk**
**593 Vanderbilt Ave., #281**
**Brooklyn, NY 11238**

_s/ Brigham J. Bowen_
Brigham J. Bowen

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTOPHER EARL STRUNK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:08-CV-02234 (RJL) |
| | ) |
| U.S. DEPARTMENT OF STATE, | ) |
| U.S. DEPARTMENT OF HOMELAND | ) |
| SECURITY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

By this Freedom of Information Act ("FOIA") action, *pro se* Plaintiff Christopher Strunk

seeks passport and travel records relating to President Barack Obama and his mother, Stanley

Ann Dunham, from Defendants.  The Court previously has dismissed all claims relating to

records concerning the President, leaving only the requests for records concerning Ms. Dunham

at issue.  March 16, 2010 Order [Dkt. #31].  The Court also has dismissed all claims against the

Department of State, leaving only one request to U.S. Customs and Border Protection ("CBP") at

issue.  March 10, 2011 Order [Dkt. #48].  CBP has completed processing of this request and has

released a single document to Plaintiff, subject to appropriate withholdings under FOIA.

Accordingly, because CBP has appropriately responded to Plaintiff's request, and because there

are no genuine issues in dispute, the Department of Homeland Security ("DHS") is entitled to

judgment in its favor as a matter of law.[1]

---

[1]CBP, a component agency within DHS, is responsible for processing Plaintiff's FOIA
request.  DHS, however, is the named defendant.  Accordingly, this filing refers primarily to the
actions of CBP as they relate to Plaintiff's request but to DHS as the moving party.

## BACKGROUND

Three FOIA requests submitted by Strunk have been at issue in this litigation.  The first, sent to State in October 2008, requested "exit and entry records for travel outside of the USA for the period between 1960 through 1963" relating to Ms. Dunham.  Am. Compl. ¶ 12 & Ex. A (Oct. 16, 2008) [Dkt. #9]; (Galovich Decl. Ex. 1).[2]  The second request, submitted a month later, sought additional records from State, including passport and travel records relating both to then-President-Elect Barack Obama and to Dunham.  Am. Compl. ¶ 17 & Ex. E (Nov. 22, 2008) (Galovich Decl. Ex. 3).  In his third request, Strunk sought the same information from CBP as he had previously sought from State: passport and travel records relating to Obama and Dunham.  Am. Compl. ¶ 22 & Ex. I (Dec. 25, 2008) (Pullo Decl. Ex. C).

Strunk then filed a Complaint against State on December 29, 2008.  A week later (and a mere ten days after Strunk sent his FOIA request to CBP), Strunk submitted to the Court an Amended Complaint, which added DHS as a Defendant.  Am. Compl.; *see also* Pl.'s Mot. for Recons. [Dkt. #10].

Shortly after Strunk submitted his Amended Complaint to the Court (but before it was docketed),[3] State provided two responses to Strunk.  These responses (1) informed Strunk that entry and exit records are maintained not by State, but by CBP; (2) provided Strunk with contact information for that agency; and (3) informed Strunk that because Dunham is deceased, State

---

[2] The Galovich declaration [Dkt. #37-2] was submitted with Defendants' original motion for summary judgment, filed July 29, 2010.  CBP refers herein to this declaration only for purposes of background; State's processing of Plaintiff's requests lies outside of the scope of inquiry for purposes of this motion brought by CBP.

[3] The Amended Complaint was filed on February 10, 2009.

would conduct a search for passport applications submitted by her, but that, pursuant to regulation, State would not search for records relating to Obama without submission of a privacy waiver from Obama.  Galovich Decl. ¶¶ 5, 9-11 & Exs. 2, 5; *see also* 22 C.F.R. § 171.12(a) (requiring FOIA requesters seeking third-party records to provide "written authorization for access by the individual, notarized or made under penalty of perjury").

CBP responded to Strunk's third request on February 3, 2009.  Pullo Decl. ¶¶ 10-11 & Ex. A.  In this response, CBP informed Strunk that it would not release records relating to Obama because DHS regulations (like the DOS regulations) require privacy waivers before third-party records can be released. *Id.*; *see also* 6 C.F.R. §§ 5.3, 5.21(f).  In conjunction with this response, CBP released to Strunk responsive records relating to Dunham.  Pullo Decl. Ex. A.

Defendants moved for partial dismissal on April 23, 2009, asking the Court to dismiss all claims regarding records concerning the President, on grounds that Plaintiff had failed to comply with agency regulations requiring privacy waivers before requesters may seek third-party records.  The Court granted the motion on March 16, 2010.  Order [Dkt. #31].  Defendants moved for summary judgment on July 29, 2010.  Def.'s Mot. for Summ. J. [Dkt. #37].  On March 10, 2011, the Court granted the motion in part, dismissing all claims against State.  March 10, 2011 Mem. Op. [Dkt. #47].  As to CBP, the Court determined that it could not grant summary judgment based on the existing record, but denied the motion without prejudice and ordered CBP to re-file its motion and more fully explain its search for responsive documents and basis for asserting FOIA exemptions.  *Id.* at 11.  CBP now does so.  As set forth in this memorandum and in the renewed declaration of Dorothy Pullo,  CBP has appropriately completed processing of Plaintiff's FOIA requests and DHS now requests summary judgment in

its favor.

## ARGUMENT

**I.      Statutory Background And Standard Of Review.**

The FOIA, 5 U.S.C. § 552, generally mandates disclosure, upon request, of government

records held by an agency of the federal government except to the extent such records are

protected from disclosure by one of nine exemptions.  The "fundamental principle" that animates

the FOIA is "public access to Government documents." *John Doe Agency v. John Doe Corp.*,

493 U.S. 146, 151 (1989).  "The basic purpose of FOIA is to ensure an informed citizenry, vital

to the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

242 (1978).  At the same time, Congress recognized "that legitimate governmental and private

interests could be harmed by release of certain types of information and provided nine specific

exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621

(1982); *see also* 5 U.S.C. § 552(b).  While these exemptions are to be "narrowly construed,"

*Abramson*, 456 U.S. at 630, courts must not fail to give the exemptions "meaningful reach and

application," *John Doe Agency*, 493 U.S. at 152.  The FOIA thus "represents a balance struck by

Congress between the public's right to know and the government's legitimate interest in keeping

certain information confidential." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918,

925 (D.C. Cir. 2003).

Summary judgment is the procedure by which courts resolve nearly all FOIA actions.

"In order to obtain summary judgment the agency must show that it made a good faith effort to

conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." *Id.* "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the <u>search</u> for those documents was <u>adequate</u>." *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) ("A search is not unreasonable simply because it fails to produce all relevant material."); *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982).

In evaluating the adequacy of a search, courts accord agency affidavits "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). The statute does not require "meticulous documentation [of] the details of an epic search." *Perry*, 684 F.2d at 127. "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id.*

To sustain its burden of justifying nondisclosure of information, *see* 5 U.S.C. § 552(a)(4)(B), the agency must provide declarations that identify the information at issue and the bases for the exemptions claimed, *see Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Courts review *de novo* the agency's use of a FOIA exemption to withhold documents. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail ... and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  *Id.* at 374 (internal quotation marks omitted) (omission in original).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Id.* at 374-75.

## II.    CBP Conducted An Appropriate Search For Responsive Documents.

CBP's search for records responsive to Plaintiff's request was reasonably calculated to uncover all documents responsive to the request.  This search for responsive records included a search of the TECS electronic database system (previously known as the Treasury Enforcement Communications System).  Pullo Decl. ¶ 1 n.1, ¶ 7.  TECS is an overarching law enforcement information collection, analysis, and sharing environment.  TECS System of Records Notice, 73 Fed. Reg. 77778, 77779 (December 19, 2008).  TECS is comprised of several modules that collect, maintain and screen data, as well as conduct analysis, screening and information sharing. *Id.*  TECS securely links telecommunications devices and personal computers to a central system and database and includes the combined sharing of information of over 20 different federal agencies, and is operated and utilized by CBP to conduct enforcement checks on individuals seeking to enter or depart the United States.  Pullo Decl. ¶ 7.

As explained in the declaration of Dorothy Pullo, CBP does not maintain records that would be responsive to some of the categories of putative information sought by Mr. Strunk, including passport applications, "Foreign Birth Certificate[s]," "Foreign Birth Registr[ies],"and "Adoption Records and/or Governmental 'Acknowledgment[s].'"  Pullo Decl. ¶ 7 & Ex. C (Plaintiff's request for such documents).  Accordingly, the only responsive records CBP could

expect to maintain are entry/exit (i.e., border crossing) records.  Pullo Decl. ¶ 8.[4]

The Pullo declaration demonstrates that TECS is the only CBP system that would reasonably be expected to contain the requested arrival and departure (i.e., border crossing) records of Stanley Ann Dunham for the requested time periods.  Border Crossing Information (BCI) is a subset of data connected to TECS.  *Id.*  BCI receives and maintains border crossing information on travelers who are admitted or paroled into the United States, and this information may include some or all of the following: certain biographical information; photographs; certain itinerary information; and the time and location of the border crossing.  *Id.*  Because border crossing information relating to Ms. Dunham would be contained within TECS, TECS was the most likely system to have responsive data pertaining to Ms. Dunham — indeed, TECS was the only system that reasonably would be expected to contain the requested information.  For these reasons, CBP searched that system.  *Id.*

As is CBP's customary practice when searching TECS for information concerning individuals, the TECS search here consisted of an electronic query by a FOIA processor in CBP's FOIA Division covering the time period of January 1, 1982 to December 31, 1985.  *Id.* ¶ 9.[5]  The processor, who is now under the supervisory authority of Ms. Pullo, CBP's declarant, conducted this query using variations of Ms. Dunham's name and date of birth as search terms.  *Id.*  Such name variations included: Ann Dunham, Stanley Ann Obama, Ann Obama, Stanley

---

[4] Naturally, CBP's statement that it does not possess other categories of putative records does not imply or concede that such records even exist.

[5] TECS "began capturing traveler arrivals and departures into and out of the United States beginning in January of 1982."  Pullo Decl. ¶ 8.  Prior to 1982, paper entry documents were used, but such documents no longer exist and are no longer archived by CBP.  *Id.*

Ann Soetoro, Ann Soetoro, Stanley Ann Sutoro, Ann Sutoro, Stanley Ann Dunham Obama, Ann Dunham Obama, Stanley Ann Dunham Obama, and Stanley.  *Id*.  In CBP's FOIA Division's experience, such queries based on name variations and dates of birth would be expected to identify all responsive documents for a particular individual.  *Id*.  Here, the search located one page of responsive records.  *Id.*  Upon retrieval, the same FOIA processor who conducted the search reviewed the document and made appropriate redactions based upon FOIA exemptions (b)(2) and (b)(7)(E).  *Id.* ¶ 10.

This search was "reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68.  CBP identified the one system likely to contain relevant documents, searched that system using a variety of search terms aimed at locating any responsive border crossing records within that system, located one responsive document, and released it to Plaintiff with appropriate redactions.  The Pullo declaration demonstrates that CBP's search was adequate in scope and method, and summary judgment in this regard is therefore warranted.

### III.    CBP Properly Withheld Records Under Applicable FOIA Exemptions.

As of the date of CBP's prior motion for summary judgment, CBP had withheld certain information pursuant to FOIA exemptions 2 and 7(E).  Since that time, the Supreme Court decided *Milner v. Department of the Navy*, 131 S. Ct. 1259 (2011), a significant decision re-defining and clarifying the scope of Exemption 2 of the FOIA.  In *Milner*, the Court rejected the long-settled formulation of "high 2" and "low 2" employed by lower courts, emphasizing that the exemption requires that withheld information relate "solely to the internal personnel rules and practices of an agency," *i.e.*, to internal matters relating to "rules and practices dealing with employee relations or human resources."  *Id.* at 1264-65.  In light of *Milner*, CBP recently re-

visited its withholding determinations here.  On April 28, 2011, CBP re-released the single

document at issue and removed certain previous Exemption 2 redactions.  Other information

previously withheld remains withheld pursuant to FOIA Exemptions 2, 6, 7(C), and 7(E).  As set

forth below, CBP properly invoked these exemptions and processed and released all reasonably

segregable information from the responsive records.

      CBP's actions in response to *Milner* were proper.  Whereas, in the usual course of

litigation concerning FOIA withholdings, an agency might not normally re-visit its withholding

determinations and assert new exemptions over withheld information, CBP has done so here in

the unusual circumstances arising from the *Milner* decision.  That decision overturned settled

precedent, in effect for over thirty years, regarding the application of FOIA's Exemption 2.  *See

id.* at 1263 (recognizing that the Second Circuit, among others, had adopted the D.C. Circuit's

reasoning in *Crooker v. ATF*, 670 F.2d 1051 (1981)); *id.* at 1274 (Breyer, J., dissenting) ("[T]he

*Crooker* decision ... has been consistently followed, or favorably cited, by every Court of

Appeals to have considered the matter during the past 30 years.").  Courts have recognized that

"'an interim development in applicable legal doctrine'" is sufficient justification for an agency to

invoke new FOIA exemptions to protect the information at issue, even when the agency does so

for the first time on appeal.  *August v. FBI*, 328 F.3d 697, 700 (D.C. Cir. 2003) (quoting *Jordan

v. Dep't of Justice*, 591 F.2d 753 (D.C. Cir. 1978)).  The change wrought by the Supreme Court

is surely sufficient justification here, where CBP seeks to invoke new exemptions while district

court proceedings are still ongoing and before this Court has entered a final judgment.

      Moreover, CBP's prior reliance on Exemption 2 is understandable in light of the clear

applicability of Exemption 2 under thirty years of precedent prior to the Supreme Court's

decision.  *See Milner*, 131 S. Ct. at 1271 ("[W]e acknowledge that our decision today upsets three decades of agency practice relying on [prior precedent], and therefore may force considerable adjustments.").  CBP would be materially prejudiced if its reasonable reliance on clearly-applicable and longstanding precedent were to lead to a compelled disclosure of sensitive information without even considering other applicable bases for their withholding.[6]  Thus, it is well within the Court's discretion to permit CBP to consider, now that Exemption 2 has been re-defined, whether other exemptions properly apply. Indeed, the Supreme Court in *Milner* encouraged federal agencies to invoke exemptions other than Exemption 2 in order to protect information when there are legitimate reasons to withhold it.  *See id.* (recognizing that "the Government has other tools at hand to shield national security information and other sensitive materials").  As discussed below, in light of *Milner*, CBP has reevaluated the exemptions applicable to the document released to Plaintiff and has determined that some information should continue to be withheld pursuant to Exemptions 2, 6, 7(C) and 7(E).  Pullo Decl. ¶¶ 10, 12, 13.

**A.    CBP Properly Withheld TECS User Access Material Pursuant To Exemptions 2, 6, And 7(C).**

**1.    The Withholding Pursuant To Exemption 2 Was Appropriate.**

CBP properly has withheld certain CBP internal information pursuant to FOIA Exemption 2 (in addition to Exemptions 6 and 7(C)).  Exemption 2 protects information "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  As recently clarified by the Supreme Court in *Milner*, Exemption 2 applies to materials that both

---

[6] In contrast, Plaintiff would suffer no prejudice if this Court considers alternative exemptions.  Plaintiff cannot reasonably claim any previous entitlement to or reliance on the recent change in the controlling legal framework that has occurred as a result of *Milner*.

relate to an agency's "rules and practices dealing with employee relations or human resources" and contain "information [that is] 'internal'; that is, the agency must typically keep the records to itself for its own use." 131 S. Ct. at 1265 n.4 (quoting 5 U.S.C. § 552(b)(2)). When CBP originally processed the request here, this exemption had been held to protect two types of information: (1) information the release of which would "risk[] circumvention of agency regulations or statutes," *Crooker*, 670 F.2d at 1074, and (2) "routine matters of merely internal interest," *id.* at 1069; *see also Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830 n.4 (D.C. Cir. 1983) (exemption applies to material that "relates to trivial administrative matters of no genuine public interest"); *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (explaining "high 2" and "low 2" exemptions).

In light of the *Milner* decision, CBP has since re-evaluated its withholdings in the document and has made a single redaction under this exemption (and exemptions 6 and 7(C)).[7] Pullo Decl. ¶ 18. This information consists of "terminal user ID" information — a string of characters which is generally assigned to a single person or system user. *Id.* ¶¶ 15, 20. Such information, which may be used to identify a particular user of TECS, is used for purely internal purposes and inherently is personnel-related. *Id.* Moreover, there is no "genuine and significant" public interest in this internal, administrative information. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 369 (1976). Similar withholdings have been upheld under the pre-*Milner* formulation of "low 2" on the basis that the information was purely internal and relatively trivial.

---

[7] Other information previously withheld, but now released, consists of lane information, *i.e.*, information identifying which lane an international traveler was encountered by CBP at a given port of entry — the point at which an international traveler generally is first encountered by a CBP Officer for his or her inspection, in the Federal Inspection Service ("FIS") area, when applying for admission into the United States. Pullo Decl. ¶ 12 n.3.

*See*, *e.g.*, *Durrani v. Dep't of Justice*, 607 F. Supp. 2d 77, 91 (D.D.C. 2009) (internal phone

numbers and administrative markings such as codes); *Coleman v. Lappin*, 607 F. Supp. 2d 15, 21

(D.D.C. 2009) (phone and fax numbers for Bureau of Prisons personnel); *Antonelli v. Bureau of

Prisons*, 569 F. Supp. 2d 61, 65 (D.D.C. 2008) (file number used to index and retrieve

information in investigatory files).  Here, the information withheld is not only internal and of no

genuine and significant public interest (satisfying the former "low 2"), but also relates to

personnel in that the terminal user ID information relates to — and could lead to identification of

— a CBP employee.  Pullo Decl. ¶ 20.

### 2.      The Withholding Pursuant To Exemption 6 Was Appropriate.

The terminal user ID information was also withheld pursuant to Exemptions 6 and 7(C).

Exemption 6 protects from disclosure "personnel and medical files and similar files the

disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

5 U.S.C. § 552(b)(6).  Where, as here, the information withheld applies to a particular individual,

the threshold requirement (that the records be "personnel and medical files and similar files") for

Exemption 6 protection applies.  *See Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602

(1982).  Once this minimal threshold is satisfied, courts balance the privacy interests cited by the

government against the public's interest in the release of the requested information.  *Lepelletier

v. FDIC*, 164 F.3d 37, 46 (D.C Cir. 1999).  However, the "only relevant public interest in

disclosure to be weighed in this balance is the extent to which disclosure would serve the core

purpose of the FOIA, which is contributing significantly to public understanding of the

operations or activities of the government."  *Dep't of Defense v. Fed. Labor Relations Auth.*, 510

U.S. 487, 495-6 (1994) (internal citation and quotation marks omitted).  The requester must

articulate a public interest sufficient to outweigh an individual's privacy interest, and the identified public interest must be significant. *See Lewis v. Dep't. of Justice*, 733 F. Supp. 2d 97, 110-111 (D.D.C. 2010) (citing *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)).

Here, there is no significant public interest in the protected information, which implicates the privacy of a CBP employee. Revealing the information would do nothing to shed light on the operations of government, and withholding manifestly is warranted, particularly where, as here, the risk of harassment of the employee associated with the information is substantial. *See Painting and Drywall Work Pres. Fund v. Dep't of Housing and Urban Dev.*, 936 F.2d 1300, 1301-1302 (D.C. Cir. 1991) (holding that "personal identifiers" such as social security numbers and other payroll identification numbers are protected under Exemption 6); *Lahr v. NTSB*, 569 F.3d 964, at 977 (9th Cir. 2009) (reversing district court and holding that FBI agents have cognizable privacy interest in withholding their names because release of FBI agents' identity would most likely subject agents "to unwanted contact by the media and others, including [plaintiff], who are skeptical of the government's conclusion" in investigation of crash of TWA Flight 800); *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, No. 04-1625, 2006 U.S. Dist. LEXIS 94615, at *30 (D.D.C. Dec. 22, 2006) (protecting names of employees from United States Customs and Border Protection and DHS involved in anti-terrorism efforts).

### 3.   The Withholding Pursuant To Exemption 7(C) Was Appropriate.

The user ID information was also properly withheld pursuant to Exemption 7(C). Under to this exemption, an agency may withhold information within documents "compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion

of personal privacy." 5 U.S.C. § 552(b)(7)(C).  "In assessing whether records are compiled for

law enforcement purposes, ... the focus is on how and under what circumstances the requested

files were compiled, and 'whether the files sought relate to anything that can fairly be

characterized as an enforcement proceeding.'"  *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-

77 (D.C. Cir. 2002) (citations omitted).  The range of law enforcement purposes falling within

the scope of Exemption 7 includes government national security and counterterrorism activities.

*See*, *e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926; *Kidder v. FBI*, 517 F. Supp. 2d 17, 27

(D.D.C. 2007).  Furthermore, CBP, as a law enforcement agency, is entitled to deference when it

identifies material as having been compiled for law enforcement purposes under Exemption 7.

*See Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 15 (D.D.C. 2009).

     Here, the record at issue is from TECS, the very purpose of which is law-enforcement

and national-security related.  As explained in the Pullo Declaration, TECS databases contain

temporary and permanent enforcement, inspection and intelligence records relevant to the

anti-terrorism and law enforcement mission of CBP and numerous other federal agencies that it

supports.  Pullo Decl. ¶ 7; *see also* 73 Fed. Reg. 77778, 77779 (identifying TECS as a "law

enforcement and anti-terrorism data base system").  For these reasons, there can be no

reasonable debate that the TECS record here qualifies as a record compiled for law enforcement

purposes.  *See*, *e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926; *Kidder*, 517 F. Supp. 2d at 27

(D.D.C. 2007).

     The second aspect of the 7(C) assessment requires the Court to balance the privacy

interests involved against the public interest in disclosure.  *See SafeCard Servs.*, 926 F.2d at

1205; *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 762 (1989).

In terms of public interests, "the only public interest relevant for purposes of Exemption 7(C) is

one that focuses on 'the citizens' right to be informed about what their government is up to.'"

*Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489

U.S. at 773). This inquiry is similar to the inquiry performed for Exemption 6, but Exemption

7(C) applies only to documents that have been "compiled for law enforcement purposes." 5

U.S.C. § 552(b)(7). Perhaps more importantly, although both exemptions require courts to

balance individual privacy and public interests, "Exemption 7(C)'s privacy language is broader

than the comparable language in Exemption 6" in that "Exemption 6 requires that the invasion of

privacy be 'clearly unwarranted,'" a requirement omitted from the language of Exemption 7(C).

*Reporters Comm.*, 489 U.S. at 756. Thus, "although both exemptions require the court to engage

in a similar balancing analysis, they 'differ in the magnitude of the public interest that is required

to override the respective privacy interests protected by the exemptions.'" *Lahr*, 569 F.3d at 974

(quoting *Federal Labor Relations Auth.*, 510 U.S. at 496 n.6).

     For reasons similar to those supporting the Exemption 6 withholding, there is no

significant public interest in the terminal user ID information withheld here. Hence, the

significant employee privacy interests implicated by this information cannot be overcome by

Plaintiff. (Indeed, as noted above, the balance tips in favor of CBP to a greater degree in the

context of Exemption 7(C).) CBP is, therefore, entitled to summary judgment in this regard.

    **B.**    **CBP Properly Withheld Law Enforcement Information Pursuant To Exemption 7(E).**

     In addition to withholding the terminal user ID information, CBP withheld law

enforcement information pursuant to FOIA Exemption 7(E). The information withheld here was

compiled for law enforcement purposes within the meaning of Exemption 7 because, as noted

above, the TECS system is, itself, a law enforcement information system.  Moreover, as explained in the Pullo Declaration, the information responsive to Plaintiff's requests and withheld concerns "law enforcement techniques and procedures, which includes certain types of inspection, clearance, authorization procedures, and its results," information directly bearing on CBP's law-enforcement mission and activities.  Pullo Decl. ¶ 27.

As to the second aspect of the Exemption 7 inquiry (whether the law enforcement materials fit within one of the exemption's subsections), Exemption 7(E) permits withholding of information compiled for law enforcement purposes if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes, as well as techniques and procedures used to investigate crimes after they have been committed.  *See*, *e.g.*, *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)).  Exemption 7(E) does not require a particular determination of harm that would result from disclosure of specific records or information; rather, the exemption categorically protects information related to law enforcement techniques.  *See Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) ("Exemption 7(E) provides categorical protection to information related to law enforcement techniques."); *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).

16

The withholdings here fall squarely within the exemption and were proper.  As explained in the Pullo declaration, CBP Exemption 7(E) information generally consists of:

> examination and inspection procedures, internal reporting requirements, names of specific law enforcement databases used in a particular context, names of specific database modules searched in a particular context, procedures related to internal coordination, information which would reveal the strengths or weaknesses of certain law enforcement methods, information which would reveal the scope and focus of certain law enforcement techniques, particular types of secondary inspection, clearance or authorization procedures, names of specific equipment or capabilities used, external coordination procedures, internal coordination procedures and step-by-step instructions on how to process certain information.

Pullo Decl. ¶ 25.  Such information may also include "computer screen transaction codes which could reveal the precise procedures for retrieving records from a law enforcement database containing information related to the Agency's law enforcement mission." *Id.* ¶ 26.  This kind of information "is withheld to prevent unauthorized access to information which could result in alteration, loss, damage, or destruction of data contained in CBP's law enforcement database. Knowledge of internal agency computer system codes, including the system's design or program codes, could facilitate improper access to sensitive CBP records and interfere with CBP's ability to maintain control of its information systems." *Id.*  And "[r]elease of this information could expose the system to vulnerabilities and compromise the Agency's data compiled for law enforcement purposes and other Agency missions." *Id.*

More specifically, the information withheld here "includes computer screen transaction codes, the release of which could interfere with CBP's ability to securely control and maintain the information system." *Id.* ¶ 27.  Moreover, the withheld information "includes law enforcement techniques and procedures, which includes certain types of inspection, clearance, authorization procedures, and its results, which, if disclosed, could be used to develop

countermeasures to circumvent CBP operations and its ability to enforce the laws of the United States." *Id.*

All of this information directly bears on law enforcement techniques and guidelines and, if disclosed, would risk circumvention of the law by exposing the operations, capabilities, techniques for use, and means of access to TECS and the information stored therein. Accordingly, CBP's 7(E) withholdings are appropriate. *See Barnard*, 598 F. Supp. 2d at 22 (upholding CBP withholding of examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers).

**C.      CBP Processed And Released All Reasonably Segregable Information From The Responsive Records.**

As required by the FOIA, CBP has provided all "reasonably segregable" responsive information that is not protected under a FOIA exemption.  5 U.S.C. § 552(b).  CBP processed all documents to achieve maximum disclosure consistent with the access provisions of the FOIA, and made every effort to provide Plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material.  *See* Pullo Decl. ¶¶ 28-29.  Only material subject to withholding was redacted, and no reasonably segregable, nonexempt portions were withheld.  *Id.*  CBP indicated where any material was withheld in the documents released to Plaintiff and provided coded categories to indicate the nature of any information withheld.  *Id.* All the material withheld is exempt from disclosure pursuant to FOIA exemptions or is so intertwined with protected material that segregation is not possible without revealing the underlying protected material.  *Id.*

**CONCLUSION**

CBP's search, release and withholdings in response to Plaintiff's FOIA request were

proper.  For each of the foregoing reasons, DHS respectfully requests summary judgment in its favor.

Dated: April 29, 2011                     Respectfully submitted,

                                          TONY WEST
                                          Assistant Attorney General

                                          RONALD C. MACHEN, JR.
                                          United States Attorney

                                          ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                          Deputy Branch Director

                                          _____*s/ Brigham J. Bowen*_____
                                          BRIGHAM J. BOWEN (D.C. Bar No. 981555)
                                          Civil Division, U.S. Department of Justice
                                          Federal Programs Branch
                                          P.O. Box 883, 20 Massachusetts Ave., N.W.
                                          Washington, D.C. 20044
                                          Ph.     (202) 514-6289
                                          Fax     (202) 616-8470
                                          brigham.bowen@usdoj.gov

                                          *Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

CHRISTOPHER EARL STRUNK,      )
           )
      Plaintiff,      )
           )
v.           )     Case No. 1:08-CV-02234 (RJL)
           )
U.S. DEPARTMENT OF STATE,      )
U.S. DEPARTMENT OF HOMELAND      )
SECURITY,      )
           )
      Defendants.      )
_____

**STATEMENT OF MATERIAL FACTS**
**AS TO WHICH THERE IS NO GENUINE ISSUE**

As required by LCvR 7(h)(1), and in support of the Motion for Summary Judgment filed

on behalf of the Department of Homeland Security ("DHS"), DHS hereby makes the following

statement of material facts as to which there is no genuine issue.

**PLAINTIFF'S FOIA REQUEST**

1.    By letter dated December 25, 2008, Plaintiff submitted a FOIA request to U.S. Customs

and Border Protection ("CBP") seeking, *inter alia*, passport and travel information

concerning President Barack Obama and his mother, Stanley Ann Dunham.  Pullo Decl. ¶

5 & Ex. C.

**DEFENDANT'S RESPONSES**

2.    By letter dated February 3, 2009, CBP issued a response to Plaintiff's December 25, 2008

FOIA request.  In this response, CBP informed Strunk that it would not release records

relating to Obama because DHS regulations require privacy waivers before third-party

records can be released.  In conjunction with this response, CBP released to Strunk

responsive entry/exit records relating to Dunham.  Pullo Decl. ¶¶ 10-11 & Ex. A.

3.      CBP's search for responsive records relating to Dunham consisted of a search of the

TECS electronic database system, which includes traveler arrivals and departures into

and out of the United States from January 1982 onward.  Pullo Decl. ¶ 9.

4.      Prior to January 1982, paper entry documents were used.  Such documents no longer

exist and are no longer archived.  Pullo Decl. ¶ 8.

5.      TECS is the only CBP system that would reasonably be expected to contain the requested

arrival and departure records of Stanley Ann Dunham for the requested time periods after

1982.  Pullo Decl. ¶ 8.

6.      In addition to the above, as part of his request, Plaintiff also requested documents relating

to any and all U.S. applications for a U.S. passport; foreign birth certificate and foreign

birth registry filed or registered with the U.S. Embassy of Kenya or U.S. Embassy of

Indonesia for Barack H. Obama and Stanley Ann Dunham; and adoption records and/or

governmental "acknowledgment" of Barack Obama by Lolo Soetoro.  Pullo Decl. ¶ 6 &

Ex. C.

7.      Presuming that such records even exist, CBP does not collect or maintain such records,

nor is CBP the custodian for such records.  Therefore, CBP did not search any systems

for these requested documents.  Pullo Decl. ¶ 6.

8.      A FOIA processor in CBP's FOIA Division conducted a query in TECS for the time

period January 1, 1982 (when TECS began capturing arrival/departure information)

through December 31, 1985, using variations of the subject's name and date of birth as

search terms:  Stanley Ann Dunham, with the date of birth of November 29, 1942, to

include:  Ann Dunham, Stanley Ann Obama, Ann Obama, Stanley Ann Soetoro, Ann

Soetoro, Stanley Ann Sutoro, Ann Sutoro, Stanley Ann Dunham Obama, Ann Dunham

Obama, Stanley Ann Dunham Obama, and Stanley.  Pullo Decl. ¶ 9.

9.      In connection with its February 2009  release of records, CBP withheld information

pursuant to FOIA Exemptions 2 and 7(E).  Pullo Decl. ¶ 10.

10.     After the Supreme Court's decision in *Milner v. Department of the Navy*, 131 S. Ct. 1259

(2011), CBP revisited its withholding determinations with respect to the single document

released to Plaintiff.  Pullo Decl. ¶ 12 & Ex. D.

11.     Pursuant to its review, CBP released certain information to Plaintiff and withheld other

information pursuant to Exemptions 2, 6, 7(C), and 7(E).  Pullo Decl. ¶ 13.

12.     The information withheld included terminal user ID information for the TECS system

which is generally assigned to a single person or system user and could be used to

identify the specific individual or employee accessing the record in the TECS system.

This information was withheld pursuant to Exemptions 2, 6, and 7(C).  Pullo Decl. ¶ 15.

13.     The information withheld pursuant to Exemptions 2, 6, and 7(C) is purely internal

information that relates to personnel policies and practices.  Pullo Decl. ¶ 15.

14.     Public access to the information withheld pursuant to Exemptions 2, 6, and 7(C) would

serve no genuine and significant public interest and would constitute a clearly

unwarranted invasion of personal privacy.  Pullo Decl. ¶ 20.

15.     The record at issue, as part of TECS, is compiled for a law enforcement purpose.  Pullo

Decl. ¶ 25.

16.     The terminal user ID information withheld is contained in a record system compiled for a

law enforcement purpose, and the privacy interest in the individual associated with that

information clearly outweighs any minimal public interest in such information.  Pullo Decl. ¶ 23.

17.   The information withheld pursuant to Exemption 7(E) consists of law enforcement techniques, procedures and guidelines.   Pullo Decl. ¶ 25.

18.   Generally, such information may include examination and inspection procedures, internal reporting requirements, names of specific law enforcement databases used in a particular context, names of specific database modules searched in a particular context, procedures related to internal coordination, information which would reveal the strengths or weaknesses of certain law enforcement methods, information which would reveal the scope and focus of certain law enforcement techniques, particular types of secondary inspection, clearance or authorization procedures, names of specific equipment or capabilities used, external coordination procedures, internal coordination procedures and step-by-step instructions on how to process certain information.  Pullo Decl. ¶ 25.

19.   Disclosure of this information would permit potential violators, to whom the documents may be disclosed, to develop countermeasures to evade detection, inspection and examination methods.  Pullo Decl. ¶ 25.

20.   Public awareness of this operational information would aid those who seek to circumvent CBP operations and thus harm the agency's ability to enforce the laws of the United States.  The release of such information, as protected under Exemption 7(E), would divulge to the Plaintiff the examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers and goods seeking admission or entry into the United States, the very information that CBP seeks to protect. Pullo Decl. ¶ 25.

21.  Information withheld pursuant to Exemption 7(E) may also generally consist of computer screen transaction codes which could reveal the precise procedures for retrieving records from a law enforcement database containing information related to the Agency's law enforcement mission.  Pullo Decl. ¶ 26.

22.  The information is withheld to prevent unauthorized access to information which could result in alteration, loss, damage, or destruction of data contained in CBP's law enforcement database.  Knowledge of internal agency computer system codes, including the system's design or program codes, could facilitate improper access to sensitive CBP records and interfere with CBP's ability to maintain control of its information systems.  Pullo Decl. ¶ 26.

23.  Release of this information could expose the system to vulnerabilities and compromise the Agency's data compiled for law enforcement purposes and other Agency missions.  Pullo Decl. ¶ 26.

24.  Here, information withheld pursuant to Exemption 7(E) includes computer screen transaction codes, the release of which could interfere with CBP's ability to securely control and maintain the information system.  Pullo Decl. ¶ 27.

25.  Information withheld here pursuant to Exemption 7(E) includes law enforcement techniques and procedures, which includes certain types of inspection, clearance, authorization procedures, and its results, which, if disclosed, could be used to develop countermeasures to circumvent CBP operations and its ability to enforce the laws of the United States.  Pullo Decl. ¶ 27.

26.  CBP conducted a line-by-line review of each record identified as responsive to Plaintiff's FOIA request to identify information which is exempt from disclosure or for which a

discretionary waiver of exemption could be applied and to determine which records must be produced in a redacted form.  Pullo Decl. ¶ 28 & Ex. B.

27.  All information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released.  Information withheld was individually determined to be exempt from release.  Pullo Decl. ¶ 29 & Ex. B.


Dated: April 29, 2011                    Respectfully submitted,

                                         TONY WEST
                                         Assistant Attorney General

                                         RONALD C. MACHEN, JR.
                                         United States Attorney

                                         ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                         Deputy Branch Director

                                         _____ *s/ Brigham J. Bowen*
                                         BRIGHAM J. BOWEN (D.C. Bar No. 981555)
                                         Civil Division, U.S. Department of Justice
                                         Federal Programs Branch
                                         P.O. Box 883, 20 Massachusetts Ave., N.W.
                                         Washington, D.C. 20044
                                         Ph.     (202) 514-6289
                                         Fax     (202) 616-8470
                                         brigham.bowen@usdoj.gov

                                         *Counsel for Defendants*