UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CHRISTOPHER EARL STRUNK, )
)
Plaintiff, )
)
v. ) Civil Action No. 08-2234 (RJL)
)
UNITED STATES DEPARTMENT )
OF STATE, *et al.*, )
)
Defendants. )
_____ )

## MEMORANDUM OPINION

February /5, 2012 [Dkt. #50, 52]

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552 (2006), seeking information from United States Customs and Border Protection ("CBP"), a component of the United States Department of Homeland Security ("DHS"), about Stanley Ann Dunham, the late mother of President Barack Obama. This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. #52],[1] and for the reasons discussed below, the motion is granted, in part, and denied, in part, without prejudice.

---

[1]   The Court previously dismissed plaintiff's claims regarding his requests to the U.S. Department of State and the DHS for information about President Obama, *see Strunk v. U.S. Dep't of State*, 693 F. Supp. 2d 112, 115 (D.D.C. 2010) [Dkt. #31], and to the U.S. Department of State for information about Ms. Dunham, *see Strunk v. U.S. Dep't of State*, 770 F. Supp. 2d 10, 16 (D.D.C. 2011) [Dkt. #48].
   Also before the Court is plaintiff's Notice of Motion for Reconsideration []by Leave to File a Motion for Vaughn Index [Dkt. #50]. The Court construes this "Notice" as a motion to reconsider the prior rulings with respect to plaintiff's FOIA requests to the State Department and finds it meritless. The motion is denied.

1

I. BACKGROUND

Plaintiff describes the subject of his FOIA request as follows:

> Stanley Ann Dunham, a/k/a Ann Dunham a/k/a Stanley Ann Obama a/k/a Ann Obama a/k/a Stanley Ann Soetoro a/k/a Ann Soetoro a/k/a Stanley Ann Sutoro a/k/a Ann Sutoro a/k/a Stanley Ann Dunham Obama a/k/a Ann Dunham Obama, born November 29, 1942 at Fort Leavenworth KS. U.S., a.k.a. Stanley Ann Dunham Obama and who died on November 7, 1995 under the name Stanley Ann Dunham Soetoro (a.k.a. Sutoro).

Comp. ¶ 3. He requested the following information about Ms. Dunham:

a. Any and all U.S. Applications for a U.S. Passport;

b. Entry and Exit Passport Records pertaining to the United States and Kenya from the period of time of January 01, 1960 to December 31, 1975 and January 1, 1979 to December 31, 1985;

c. Entry and Exit Passport Records pertaining to the United States and Indonesia from the period of time of January 01, 1960 to December 31, 1973 and January 1, 1979 to December 31, 1985;

d. The above travel records on for [sic] the dates specified traveling on a U.S. Passport, Kenyan Passport, Indonesian Passport or any other foreign passport and/or visa;

e. Foreign Birth Certificate registered and filed with the U.S. Embassy, Kenya and/or U.S. Embassy of Indonesia for Barack H. Obama a/k/a Barry Soetoro, Date of Birth: August 4, 1961;

f. Foreign Birth Registry filed with the U.S. Embassy, Kenya and/or U.S. Embassy of Indonesia by Stanley Ann Dunham, et al. [r]egistering the birth of Barack H. Obama a/k/a Barry Soetoro, Date of Birth: August 4, 1961; and

g. Adoption Records and/or Governmental "Acknowledgment" wherein Barack H. Obama a/k/a Barry Soetoro was "acknowledged" as Lolo Soetoro, M.A.'s son.

*Id.* ¶ 4.

CBP does not collect or maintain records regarding applications for United States passports, foreign birth certificates or registries, or adoption records and/or governmental

"acknowledgments" of paternity. Declaration of Dorothy Pullo ("Pullo Decl.") ¶ 6, Ex. 1 to Def.'s Mot. for Summ. J., Apr. 29, 2011 ("Def.'s Mot."). It does, however, maintain "border crossing information on travelers who are admitted or paroled into the United States." *Id.* ¶ 8.

CBP staff conducted a search of TECS, an electronic database containing "temporary and permanent enforcement, inspection and intelligence records relevant to the anti-terrorism and law enforcement mission of CBP and numerous other federal agencies that it supports," *id.* ¶ 7, for responsive records "for the time period January 1, 1982 (when TECS began capturing arrival/departure information) through December 31, 1985, using variations of the subject's name and date of birth as search terms," *id.* ¶ 9. This search yielded "[o]ne page of responsive records," from which CBP redacted certain information pursuant to Exemptions 2, 6, 7(C) and 7(E) prior to releasing the document to the plaintiff. *Id.* ¶¶ 9, 10, 12.

## II. DISCUSSION

### *A. Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). "An agency is entitled to summary judgment in a FOIA suit once it demonstrates that no material facts are in dispute and that it conducted a search of records in its custody or control . . . that was reasonably calculated to uncover all relevant information . . . which either has been released to the requestor or is exempt from disclosure." *Tunchez v. U.S. Dep't of Justice*, 715 F. Supp. 2d 49, 53 (D.D.C. 2010) (internal citations omitted), *aff'd*, No. 10-5228, 2011 WL 1113423 (D.C. Cir. Mar. 14, 2011) (per curiam); *see Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001).

The Court may grant summary judgment based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."[2] *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see Beltranena v. Clinton*, 770 F. Supp. 2d 175, 181-82 (D.D.C. 2011). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### B. CBP's Search for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). The "search need not be exhaustive." *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 9 (D.D.C. 2009) (citation omitted). "The issue in a[] FOIA case is not whether the agenc[y's] searches uncovered responsive documents, but rather whether

---

[2] CBP's declarant is "the current Director of the Freedom [of] Information Act (FOIA) Division, Office of International Trade, U.S. Customs and Border Protection (CBP)," who "is responsible for the overall supervision of the processing of [FOIA] requests for information in CBP record systems, including records related to the processing of arriving international travelers at the border." Pullo Decl. ¶ 1. She makes her declaration based on: "(1) [her] review of the official files and records of this office; (2) [her] personal knowledge of the internal operations of this office and agency; and (3) information acquired by [her] in the course of the performance of [her] official duties." *Id.* ¶ 2.

the searches were reasonable." *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996) (citation omitted).

To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982). The affidavits or declarations must describe "what records were searched, by whom, and through what processes," *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994), and also must show that the search was "reasonably calculated to uncover all relevant documents," *Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 1, 20 (D.D.C. 2004) (citing *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate compliance with FOIA. *Perry*, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

TECS, which CBP operates and uses "to conduct enforcement checks on individuals seeking to enter or depart the United States[,] . . . is an overarching law enforcement information collection, analysis, and sharing environment that securely links telecommunications devices and personal computers to a central system and database." Pullo Decl. ¶ 7. "It is comprised of several modules designed to collect, maintain, and screen data as well as conduct analysis, screening, and information sharing." *Id.* Its "databases contain temporary and permanent enforcement, inspection and intelligence records relevant to the anti-terrorism and law enforcement mission of CBP and numerous other federal agencies that it supports," and it "maintains limited information on those individuals who have been granted access to the

system." *Id.* "TECS also allows direct access to other major law enforcement systems . . . and includes the combined sharing of information of over 20 different federal agencies." *Id.*

Information on travelers entering or exiting the United States is maintained in "a subset of data connected to TECS" called Border Crossing Information ("BCI"). *Id.* ¶ 8. Such information might include biographical information, photographs, itinerary information, and the time and location of border crossings. *Id.* Records prior to 1982 were maintained in paper form; currently paper records "no longer exist and are no longer archived." *Id.* Starting in January 1982, TECS "began capturing traveler arrivals and departures into and out of the United States." *Id.*

CBP staff determined that "TECS is the only CBP system that would reasonably be expected to contain the requested arrival and departure records of Stanley Ann Dunham for the requested time periods after 1982." *Id.* In the experience of CBP's declarant, "queries based on name variations and date of birth would be expected to identify all responsive documents for a particular individual." *Id.* ¶ 9. Accordingly, a FOIA Division staff member under the declarant's supervision "conducted a query in TECS for the time period January 1, 1982 (when TECS began capturing arrival/departure information) through December 31, 1985, using variations of the subject's name and date of birth as search terms." *Id.* That search yielded one page containing information about Stanley Ann Dunham. *Id.*

Based on his challenge to CBP's search for responsive records, plaintiff believes that additional records exist but have not been released in order to protect Ms. Dunham's privacy. *See* Pl.'s Opp'n ¶¶ 2- 3, May 27, 2011 [Dkt. #54]. He notes that "Stanley Ann Dunham/Obama/Soetoro died in the 1990's and there could not possibly be a reason that a dead person could be embarrassed." *Id.* ¶ 3. Plaintiff attaches copies of "public records available in

6

the public domain" for the purpose of showing "that Stanley Ann Dunham Obama before July 1964 was in the Philippines and therefore not only had a passport before 1965 but [also that] there are records of such travel and that such travel must be made available, notwithstanding the allegation that such would be a violation of privacy or methods or sources of Customs." *Id.* ¶ 14. Plaintiff's challenges are without merit.

At no time does CBP's declarant even suggest that information has been withheld in order to protect the privacy interests of the late Ms. Dunham. In fact, CBP acknowledges that "Stanley Ann Dunham . . . is widely known as a matter of public record to be deceased." Feb. 3, 2009 Letter from Mark Hanson to Plaintiff, Ex. A to Pullo Decl., at 1. Therefore, its decision to withhold information is not related to concerns for Ms. Dunham's privacy.

Plaintiff's remaining objection stems from his belief that CBP controls additional responsive records that it refuses to disclose for improper purposes, such as "covering-up for the Usurper presently in the White House." Pl.'s Opp'n ¶ 4. "[S]peculation as to the existence of additional records . . . does not render the searches inadequate." *Concepcion v. FBI*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009). Even if the records plaintiff seeks do exist, he provides no support for the proposition that they are maintained in the TECS database or that CBP controls them. *See Accuracy in Media, Inc. v. Nat'l Transp. Safety Bd.*, No. 03-00024, 2006 WL 826070, at *8 (D.D.C. Mar. 29, 2006) (finding that plaintiff's production of parts of unproduced documents, suggesting the existence of responsive documents, "does not mean that [the responsive documents] exist now or that the agency has possession of them"). Without such support, plaintiff can neither overcome the presumption of good faith afforded to agency declarations, *see SafeCard Servs., Inc.*, 926 F.2d at 1200 (noting the substantial weight traditionally accorded to agency affidavits in FOIA cases), nor undermine CBP's showing as to

the reasonableness of its search, *see Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006) (finding the plaintiff's "assertion that an adequate search would have yielded more documents is mere speculation" and affirming the district court's decision that the agency's search procedure was "reasonably calculated to generate responsive documents"); *Media Research Ctr. v. U.S. Dep't of Justice*, Nos. 10-2013 & 11-0426, 2011 WL 4852224, at *4 (D.D.C. Oct. 13, 2011) (rejecting plaintiffs' contention "that the search was inadequate because certain documents they believe must have been created have not been produced" as "conjecture" deemed "insufficient to justify a finding that the search was inadequate").

The Court concludes that CBP's search for records responsive to plaintiff's FOIA request was reasonably calculated to locate responsive records.

### C. Exemptions

#### 1. Exemption 6[3]

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The phrase "personnel and medical files and similar files" is interpreted broadly, *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006), and the decision to withhold information does not "turn upon the label of the file which contains the damaging information," *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601 (1982). Nor is the term "files" interpreted literally. "[B]its of personal information, such as names and addresses, the release of

---

[3] CBP relies on Exemptions 2, 6 and 7(C) to protect "a string of characters that identifies a terminal user ID which is generally assigned to a single person or system user." Pullo Decl. ¶ 15. Because the Court determines that CBP properly withheld this information under Exemption 6, it need not consider the application of the other exemptions. *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011); *Simon v. Dep't of Justice*, 980 F.2d 782, 784-85 (D.C. Cir. 1992).

which would create a palpable threat to privacy[,]" may be protected under Exemption 6. *Judicial Watch, Inc.*, 449 F.3d at 152 (quoting *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 391 (D.C. Cir. 1987)) (brackets and internal quotation marks omitted).

The information withheld in this case "contains unique characters constituting a terminal user ID which is generally assigned to a single person or system user," and disclosure of this information, the declarant asserts, "could be used to identify the specific Agency employee/TECS user accessing that record." Pullo Decl. ¶ 20. Insofar as the information "relates to or identifies specific personnel within the Agency," CBP withholds it in order to protect "the privacy interests of the individual." *Id.*

The Court's first step in analyzing an exemption is to "determine whether [ ] disclosure would compromise a substantial, as opposed to a *de minimis,* privacy interest." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989). Exemption 6 is "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *Wash. Post Co.*, 456 U.S. at 602 (internal quotation marks and citation omitted). "Even seemingly innocuous information can be enough to trigger the protections of Exemption 6." *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005). The information need not be "embarrassing or of an intimate nature." *Horner*, 879 F.2d at 875. In these circumstances, the Court finds that the TECS user has a privacy interest in the withheld information.

The Court next considers whether the public interest in the disclosure of the redacted information outweighs the TECS user's personal privacy interest. *See Ripskis v. Dep't of Hous. & Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984) (per curiam). "Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom

of Information Act to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (internal quotation marks and citation omitted). The only relevant public interest in disclosure is the extent to which disclosure would serve the core purpose of [] FOIA, which is contribut[ing] significantly to public understanding of the operations or activities of the government." *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1052 (D.C. Cir. 2009) (internal quotation marks and citation omitted). CBP argues that "[r]evealing the information would do nothing to shed light on the operations of government," but would pose a substantial "risk of harassment of the employee associated with the information," and therefore, withholding the information is warranted. Def.'s Mot. for Summ. J. at 12. Plaintiff articulates no public interest, significant or otherwise, to show that the public interest outweighs the privacy interest at stake. *See Taitz v. Astrue*, No. 11-402, 2011 WL 3805741, at *4 (D.D.C. Aug. 30, 2011) (finding that the Social Security Administration properly redacted information under Exemption 6 from application forms for social security cards because "[d]isclosure of the requested [forms] would implicate a substantial privacy interest while serving no public interest cognizable under FOIA"); *see also Horner*, 879 F.2d at 879 ("[S]omething, even a modest privacy interest, outweighs nothing every time."). The Court concludes that no public interest is served by disclosure of the unique characters constituting a terminal user ID, and therefore, the terminal user ID is properly withheld under Exemption 6.

### 2. Exemption 7(E)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). CBP

withheld information which purportedly "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

According to CBP's declarant, the information withheld under Exemption 7(E) "consists of inspection for entry activities and dispositions" and "contains computer screen transaction codes." *Vaughn* Index, Ex. B to Pullo Decl., at 2. The declarant further explains:

> Generally, such information may include examination and inspection procedures, internal reporting requirements, names of specific law enforcement databases used in a particular context, names of specific database modules searched in a particular context, procedures related to internal coordination, information which would reveal the strengths or weaknesses of certain law enforcement methods, information which would reveal the scope and focus of certain law enforcement techniques, particular types of secondary inspection, clearance or authorization procedures, names of specific equipment or capabilities used, external coordination procedures, internal coordination procedures and step-by-step instructions on how to process certain information

Pullo Decl. ¶ 25. Release of this information, the declarant avers, "would permit potential violators . . . to develop countermeasures to evade detection, inspection and examination methods," and "would divulge to the Plaintiff the examination and inspection procedures, internal reporting requirements and instructions on how to process international travelers and goods seeking admission or entry into the United States, the very information that CBP seeks to protect." *Id.*

D.C. Circuit precedent "sets a relatively low bar for the agency to justify withholding" information under Exemption 7(E). *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The exemption allows for withholding information "not just for circumvention of the law, but for a

risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* (quoting *Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193 (D.C. Cir. 2009)). CBP does not meet even this low standard. It withholds "law enforcement techniques, procedures and guidelines," which "may include" several items listed in the declaration, Pullo Decl. ¶ 25, but FOIA demands "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). CBP's submissions offer too little detail to allow this Court to undertake a meaningful assessment of the redacted material.

### III.  CONCLUSION

For the reasons discussed above, the Court finds that CBP conducted an adequate and reasonable search for records responsive to plaintiff's FOIA request for information pertaining to Stanley Ann Dunham and that it properly withheld information under Exemption 6. However, CBP has not demonstrated that it properly withheld information under Exemption 7(E). Accordingly, Defendant's Motion for Summary Judgment is granted, in part, and denied, in part, without prejudice. An Order accompanies this Memorandum Opinion.

*[signature]*

RICHARD J. LEON
United States District Judge