# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER EARL STRUNK,       ) | |
|                           ) | |
|       Plaintiff,            ) | |
|                           ) | |
| v.                             ) | Case No. 1:08-CV-02234 (RJL) |
|                           ) | |
| U.S. DEPARTMENT OF STATE,       ) | |
| U.S. DEPARTMENT OF HOMELAND     ) | |
| SECURITY,                   ) | |
|                           ) | |
|       Defendants.         ) | |
|                           ) | |

## DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the federal Rules of Civil Procedure, Defendant U.S. Department of Homeland Security ("DHS") respectfully moves for summary judgment.

By this Freedom of Information Act ("FOIA") action, *pro se* Plaintiff Christopher Strunk seeks passport and travel records relating to President Barack Obama and his mother, Stanley Ann Dunham, from Defendants.  The Court has previously dismissed all claims relating to records concerning the President, leaving only the requests for records concerning Ms. Dunham at issue.  March 16, 2010 Order [Dkt. #31].  The Court also has dismissed all claims against the Department of State, leaving only one request to U.S. Customs and Border Protection ("CBP") at issue.  March 10, 2011 Order [Dkt. #48].  CBP has completed processing of this request and has released a single document to Plaintiff, subject to appropriate withholdings under FOIA.  The Court has granted judgment in favor of the Department of Homeland Security ("DHS") with respect to the adequacy of CBP's search and as to information withheld under Exemptions 2, 6,

and 7(C) of the FOIA. *Feb. 15, 2012 Mem. Op.* [Dkt. #56].[1]  The sole remaining issue is

whether CBP's withholdings under Exemption 7(E) are proper.  *Id.* at 12.  In the Court's most

recent Opinion, the Court determined that it needed more information regarding the information

withheld under this exemption and denied DHS's motion for summary judgment in part and

without prejudice.  *Id.*  By this motion and in the accompanying CBP declaration, DHS now

provides the additional information required by the Court.  The reasons supporting this motion

are set forth in the accompanying memorandum in support.  A statement of material facts as to

which there is no genuine issue and a proposed order are also attached for the Court's

consideration.  Because CBP has appropriately responded to Plaintiff's request, and because

there are no genuine issues in dispute, DHS is entitled to judgment in its favor as a matter of law.

Dated: March 30, 2012                    Respectfully submitted,

                                         TONY WEST
                                         Assistant Attorney General

                                         RONALD C. MACHEN, JR.
                                         United States Attorney

                                         ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                         Deputy Branch Director

                                         _____*s/ Brigham J. Bowen*_____
                                         BRIGHAM J. BOWEN (D.C. Bar No. 981555)
                                         Civil Division, U.S. Department of Justice
                                         Federal Programs Branch
                                         P.O. Box 883, 20 Massachusetts Ave., N.W.

---

[1]The Court upheld these withholdings based upon its review of only Exemption 6.  *Feb. 12, 2012 Mem. Op.* [Dkt. #56] at 8-10.

Washington, D.C. 20044
Ph.      (202) 514-6289
Fax      (202) 616-8470
brigham.bowen@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 30th day of March, 2012 , I caused a true and correct

copy of the foregoing motion to be served upon Plaintiff by first class United States mail,

postage prepaid marked for delivery to:

> **Christopher E. Strunk**
> **593 Vanderbilt Ave., #281**
> **Brooklyn, NY 11238**

*s/ Brigham J. Bowen*
Brigham J. Bowen

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHRISTOPHER EARL STRUNK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-CV-02234 (RJL) |
| | ) | |
| U.S. DEPARTMENT OF STATE, | ) | |
| U.S. DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## RENEWED MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

By this Freedom of Information Act ("FOIA") action, *pro se* Plaintiff Christopher Strunk

seeks passport and travel records relating to President Barack Obama and his mother, Stanley

Ann Dunham, from Defendants.  The Court has previously dismissed all claims relating to

records concerning the President, leaving only the requests for records concerning Ms. Dunham

at issue.  March 16, 2010 Order [Dkt. #31].  The Court also has dismissed all claims against the

Department of State, leaving only one request to U.S. Customs and Border Protection ("CBP") at

issue.  March 10, 2011 Order [Dkt. #48].  CBP has completed processing of this request and has

released a single document to Plaintiff, subject to appropriate withholdings under FOIA.  The

Court has granted judgment in favor of the U.S. Department of Homeland Security ("DHS") with

respect to the adequacy of CBP's search and as to information withheld under Exemptions 2, 6,

and 7(C) of the FOIA.  Feb. 15, 2012 Mem. Op. [Dkt. #56].[1]  The sole remaining issue is

whether CBP's withholdings under Exemption 7(E) are proper.  *Id.* at 12.  In the Court's most

recent Opinion, the Court determined that it needed more information regarding the information

withheld under this exemption and denied DHS's motion for summary judgment in part and

without prejudice.  *Id.*  By this motion and in the accompanying CBP declaration, DHS now

provides the additional information required by the Court.  As explained in detail below, the

information withheld under Exemption 7(E) consists of law enforcement techniques and

procedures, including database and system codes, keystroke codes, and investigatory results, all

of which are subject to withholding as protected law enforcement information.  Accordingly,

CBP has appropriately responded to Plaintiff's request, and because there are no genuine issues

in dispute, DHS is entitled to judgment in its favor as a matter of law.[2]

## STATUTORY BACKGROUND AND STANDARD OF REVIEW

The FOIA, 5 U.S.C. § 552, generally mandates disclosure, upon request, of government

records held by an agency of the federal government except to the extent such records are

protected from disclosure by one of nine exemptions.  The "fundamental principle" that animates

the FOIA is "public access to Government documents."  *John Doe Agency v. John Doe Corp.*,

493 U.S. 146, 151 (1989).  "The basic purpose of FOIA is to ensure an informed citizenry, vital

to the functioning of a democratic society, needed to check against corruption and to hold the

---

[1]The Court upheld these withholdings based upon its review of only Exemption 6.  Feb. 12, 2012 Mem. Op. [Dkt. #56] at 8-10.

[2]CBP, a component agency within DHS, is responsible for processing Plaintiff's FOIA request.  DHS, however, is the named defendant.  Accordingly, this filing refers primarily to the actions of CBP as they relate to Plaintiff's request but to DHS as the moving party.

governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also* 5 U.S.C. § 552(b).  While these exemptions are to be "narrowly construed," *Abramson*, 456 U.S. at 630, courts must not fail to give the exemptions "meaningful reach and application," *John Doe Agency*, 493 U.S. at 152.  The FOIA thus "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003).

Summary judgment is the procedure by which courts resolve nearly all FOIA actions.  To sustain its burden of justifying nondisclosure of information, *see* 5 U.S.C. § 552(a)(4)(B), the agency must provide declarations that identify the information at issue and the bases for the exemptions claimed, *see Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998).  Courts review *de novo* the agency's use of a FOIA exemption to withhold documents.  *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007).  "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail ... and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Id.* at 374 (internal quotation marks omitted) (omission in original).  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it

3

appears 'logical' or 'plausible.'" *Id.* at 374-75.[3]

## ARGUMENT

## I.     CBP Properly Withheld Records Under Exemption 7(E).

In response to Mr. Strunk's FOIA request, CBP identified and released a single document

reflecting entry and exit records from the United States for Stanley Ann Dunham.  Feb. 15, 2012

Order at 3, 6; March 30, 2012 Pullo Decl. Ex. B.  In addition to other withholdings already

upheld by this Court, CBP withheld certain information pursuant to Exemption 7(E) from the

document released to Mr. Strunk.

Under Exemption 7(E), an agency may withhold information within documents

"compiled for law enforcement purposes" that "would disclose techniques and procedures for

law enforcement investigations or prosecutions, or would disclose guidelines for law

enforcement investigations or prosecutions if such disclosure could reasonably be expected to

risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This is a two-part inquiry.  As to the

first part — regarding "whether records are compiled for law enforcement purposes [—] ... the

focus is on how and under what circumstances the requested files were compiled, and 'whether

the files sought relate to anything that can fairly be characterized as an enforcement

proceeding.'"  *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations

omitted).  The range of law enforcement purposes falling within the scope of Exemption 7

includes government national security and counterterrorism activities.  *See*, *e.g.*, *Ctr. for Nat'l*

---

[3]"In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The Court resolved this question in CBP's favor in its February 15, 2012 Order.  Feb. 15, 2012 Order at 8.

4

*Sec. Studies*, 331 F.3d at 926; *Kidder v. FBI*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007).

Furthermore, CBP, as a law enforcement agency, is entitled to deference when it identifies

material as having been compiled for law enforcement purposes under Exemption 7. *See*

*Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998); *Barnard v. Dep't of Homeland*

*Sec.*, 598 F. Supp. 2d 1, 15 (D.D.C. 2009).

      Here, the record at issue is from TECS, the very purpose of which is law-enforcement

and national-security related.  As explained in the accompanying declaration of Dorothy Pullo,

TECS "is an overarching law enforcement information collection, analysis, and sharing

environment that securely links telecommunications devices and personal computers to a central

system and database."  March 30, 2012 Pullo Decl. ¶ 6.  The system "is comprised of several

modules designed to collect, maintain, and screen data as well as conduct analysis, screening,

and information sharing," and its "databases contain enforcement, inspection and intelligence

records relevant to the anti-terrorism and law enforcement mission of CBP and numerous other

federal agencies that it supports." *Id.* ¶¶ 6-7; *see also* 73 Fed. Reg. 77778, 77779 (identifying

TECS as a "law enforcement and anti-terrorism data base system").  For these reasons, there can

be no reasonable debate that the TECS record here qualifies as a record compiled for law

enforcement purposes. *See, e.g.*, *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926; *Skinner v. Dep't of*

*Justice*, 806 F. Supp. 2d 105, 114-116 (D.D.C. 2011) (withholdings from TECS records upheld

under Exemption 7); *Kidder*, 517 F. Supp. 2d at 27.

      As to the second aspect of the Exemption 7 inquiry (whether the law enforcement

materials fit within one of the exemption's subsections), Exemption 7(E) permits withholding of

information compiled for law enforcement purposes if release of the information "would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes, as well as techniques and procedures used to investigate crimes after they have been committed.  *See*, *e.g.*, *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)).  Exemption 7(E) does not require a particular determination of harm that would result from disclosure of specific records or information; rather, the exemption categorically protects information related to law enforcement techniques.  *See Smith v. Bureau of Alcohol, Tobacco & Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) ("Exemption 7(E) provides categorical protection to information related to law enforcement techniques."); *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992).  In this Court, precedent "sets a relatively low bar for the agency to justify withholding" information under Exemption 7(E).  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  Withholding information is proper in the face of "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Id.* (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

The withholdings here fall squarely within the exemption and were proper.  As explained

in the Pullo declaration, the Exemption 7(E) information withheld here includes: "(1) information relating to the TECS system and operating programs, including computer screen transaction codes, computer program transaction codes, and computer function codes (*e.g.*, 'PF codes' or 'navigation keys'); and (2) information contained in the system that reflects the results of specific law enforcement database queries (the 'RSLT' column)."  March 30, 2012 Pullo Decl. ¶ 10.

The first category of information withheld "facilitates access to and navigation through TECS and reveals the mechanisms for access to and navigation through TECS."  *Id.* ¶ 11.  Specifically, "the withheld computer screen transaction code and computer program transaction code" information includes "master record code and page record code: data that show precisely how information is retrieved from the database."  *Id.*  The other information consists of "computer function codes [that] reflect exact keys and keystrokes used for navigating TECS."  *Id.*

As explained by Ms. Pullo, "[t]hese three types of codes, which are inherent in a system compiled and used for law enforcement purposes, are withheld to prevent unauthorized access to information which could result in alteration, loss, damage or destruction of data contained in CBP's computer system and lead to circumvention of the database and interfere with enforcement actions."  *Id.*  As a general matter, "[d]etailed knowledge about the system and its intricacies could lead individuals to alter their behavior to mislead law enforcement and avoid detection."  *Id.*  More specifically, and by way of example, "release of this information could not only allow an individual knowledgeable in computer mainframes and systems to have unauthorized access (or hack) into the system, but also, once an unauthorized user has gained

access to the system, knowledge of the withheld codes further facilitates the unauthorized user's ability to navigate through TECS." *Id.* ¶ 12.  Release of the withheld information "would also arm unauthorized users with the ability to corrupt the integrity of data contained therein through the alteration/manipulation of such data, which could lead to loss of the ability to timely recognize, detect, and apprehend certain individuals or otherwise detect and enforce against violations or attempts to violate the law." *Id.*  Additionally, knowledge of the withheld information could permit an intruder into the system "to potentially manipulate the way certain records are created and maintained." *Id.*  For all these reasons, "public disclosure of such information could put at risk ongoing investigations and border security operations." *Id.*  To wit, such disclosure would reveal law enforcement techniques and guidelines and risk circumvention of the law.  5 U.S.C. § 552(b)(7)(E).

As to the final category of information, the "RSLT" column, information withheld here "contains codes and information reflecting the use, application, and results of certain types of inspection, clearance, and authorization procedures as utilized at the time of an individual's entry or exit from the United States."  March 30, 2012 Pullo Decl. ¶ 13.  Such information is, by its very nature, law enforcement information, the disclosure of which "could be used to develop countermeasures to circumvent CBP operations and its ability to enforce the laws of the United States." *Id.*  By way of example, "the release of this information could reveal the names of law enforcement databases that were queried at the time of arrival and the results of those queries," *i.e.*, "targeting and inspection techniques used in the processing of international travelers." *Id.*  Disclosure of such information would enable potential violators " to design strategies to circumvent" CBP examination procedures. *Id.*  As Ms. Pullo explains, "put differently,

individuals who knew the meaning of the codes contained in the 'RSLT' column would gain

access to CBP law enforcement techniques and procedures" and thereby be enabled to "alter

their patterns of conduct, adopt new methods of operation, relocate, change associations, and

effectuate other countermeasures, thus corrupting the integrity of ongoing investigations." *Id.*

All of this information directly bears on law enforcement techniques and guidelines and,

if disclosed, would risk circumvention of the law by exposing the operations, capabilities,

techniques for use, and means of access to TECS and the information stored therein.

Withholding of this information is important, not just because of the above risks inherent in the

information's release, but for broader reasons, as well.  As Ms. Pullo explains, "[p]rotecting and

maintaining the integrity of TECS is imperative in assisting CBP to meet its mission to secure

against terrorists, their weapons, and other dangerous items from entering the United States." *Id.*

¶ 14.  "TECS is CBP's principal law enforcement and anti-terrorism database system, and it is

one of the primary tools that CBP law enforcement officers, and other personnel with authorized

access, regularly use, in order to effectively and efficiently enforce all applicable laws,

particularly as it relates to travelers and trade crossing the border into or out of the United

States." *Id.*  Furthermore, "[a]s a fundamental law enforcement tool, there is a great need to

defend TECS against any threatened or real risk of threat or compromise, not only in order to

ensure the continuance of CBP's mission, but in order to assist the other law enforcement

agencies which TECS may support." *Id.*  These concerns, which directly animate Exemption

7(E), are squarely implicated by the computer code, navigation keys, and "RSLT" information

withheld and fully justify CBP's 7(E) withholdings.  *See Blackwell*, 646 F.3d at 42; *Barnard*,

598 F. Supp. 2d at 22 (upholding CBP withholding of examination and inspection procedures,

9

internal reporting requirements and instructions on how to process international travelers).

## II.     CBP Processed And Released All Reasonably Segregable Information From The Responsive Records.

As required by the FOIA, CBP has provided all "reasonably segregable" responsive information that is not protected under a FOIA exemption.  5 U.S.C. § 552(b).  CBP processed all documents to achieve maximum disclosure consistent with the access provisions of the FOIA, and made every effort to provide Plaintiff with all material in the public domain and with all reasonably segregable portions of releasable material.  *See* March 30, 2012 Pullo Decl. ¶¶ 15-16.

 CBP indicated where any material was withheld in the documents released to Plaintiff and provided coded categories to indicate the nature of any information withheld.  *See id.* Ex. B.

Only material subject to withholding was redacted, and no reasonably segregable, nonexempt portions were withheld.  *Id.* ¶¶ 15-16.

## CONCLUSION

CBP's Exemption 7(E) withholdings in response to Plaintiff's FOIA request were proper.

For each of the foregoing reasons, DHS respectfully requests summary judgment in its favor.


Dated: March 30, 2012                          Respectfully submitted,

                                               TONY WEST
                                               Assistant Attorney General

                                               RONALD C. MACHEN, JR.
                                               United States Attorney

                                               ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                               Deputy Branch Director

                                               _____*s/ Brigham J. Bowen*_____
                                               BRIGHAM J. BOWEN (D.C. Bar No. 981555)

10

Civil Division, U.S. Department of Justice
Federal Programs Branch
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C. 20044
Ph.      (202) 514-6289
Fax      (202) 616-8470
brigham.bowen@usdoj.gov

*Counsel for Defendants*

11

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTOPHER EARL STRUNK,     ) | |
|                            ) | |
|     Plaintiff,          ) | |
|                            ) | |
| v.                         ) | Case No. 1:08-CV-02234 (RJL) |
|                            ) | |
| U.S. DEPARTMENT OF STATE,    ) | |
| U.S. DEPARTMENT OF HOMELAND    ) | |
| SECURITY,                ) | |
|                            ) | |
|     Defendants.      ) | |

**STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

As required by LCvR 7(h)(1), and in support of the Motion for Summary Judgment filed

on behalf of the U.S. Department of Homeland Security ("DHS"), DHS hereby makes the

following statement of material facts as to which there is no genuine issue.

**PLAINTIFF'S FOIA REQUEST**

1.      By letter dated December 25, 2008, Plaintiff submitted a FOIA request to U.S. Customs

and Border Protection ("CBP") seeking, *inter alia*, passport and travel information

concerning President Barack Obama and his mother, Stanley Ann Dunham.  Apr. 29,

2011 Pullo Decl. ("2011 Pullo Decl.") ¶ 5 & Ex. C.[1]

**DEFENDANT'S RESPONSES**

2.      By letter dated February 3, 2009, CBP issued a response to Plaintiff's December 25, 2008

FOIA request.  In this response, CBP informed Strunk that it would not release records

relating to Obama because DHS regulations require privacy waivers before third-party

---

[1] The 2011 Pullo Declaration is attached as Exhibit A to the March 30, 2012 Pullo
Declaration filed herewith.

records can be released.  In conjunction with this response, CBP released to Strunk

responsive entry/exit records relating to Dunham.  2011 Pullo Decl. ¶¶ 10-11 & Ex. A.

3.      CBP's search for responsive records relating to Dunham consisted of a search of the

TECS electronic database system, which includes traveler arrivals and departures into

and out of the United States from January 1982 onward.  2011 Pullo Decl. ¶ 9.

4.      Prior to January 1982, paper entry documents were used.  Such documents no longer

exist and are no longer archived.  2011 Pullo Decl. ¶ 8.

5.      TECS is the only CBP system that would reasonably be expected to contain the requested

arrival and departure records of Stanley Ann Dunham for the requested time periods after

1982.  2011 Pullo Decl. ¶ 8.

6.      In addition to the above, as part of his request, Plaintiff also requested documents relating

to any and all U.S. applications for a U.S. passport; foreign birth certificate and foreign

birth registry filed or registered with the U.S. Embassy of Kenya or U.S. Embassy of

Indonesia for Barack H. Obama and Stanley Ann Dunham; and adoption records and/or

governmental "acknowledgment" of Barack Obama by Lolo Soetoro.  2011 Pullo Decl. ¶

6 & Ex. C.

7.      Presuming that such records even exist, CBP does not collect or maintain such records,

nor is CBP the custodian for such records.  Therefore, CBP did not search any systems

for these requested documents.  2011 Pullo Decl. ¶ 6.

8.      A FOIA processor in CBP's FOIA Division conducted a query in TECS for the time

period January 1, 1982 (when TECS began capturing arrival/departure information)

through December 31, 1985, using variations of the subject's name and date of birth as

search terms:  Stanley Ann Dunham, with the date of birth of November 29, 1942, to

include:  Ann Dunham, Stanley Ann Obama, Ann Obama, Stanley Ann Soetoro, Ann

Soetoro, Stanley Ann Sutoro, Ann Sutoro, Stanley Ann Dunham Obama, Ann Dunham

Obama, Stanley Ann Dunham Obama, and Stanley.  2011 Pullo Decl. ¶ 9.

9.      In connection with its February 2009  release of records, CBP withheld information

pursuant to FOIA Exemptions 2 and 7(E).  2011 Pullo Decl. ¶ 10.

10.     After the Supreme Court's decision in *Milner v. Department of the Navy*, 131 S. Ct. 1259

(2011), CBP revisited its withholding determinations with respect to the single document

released to Plaintiff.  2011 Pullo Decl. ¶ 12 & Ex. D.

11.     Pursuant to its review, CBP released certain information to Plaintiff and withheld other

information pursuant to Exemptions 2, 6, 7(C), and 7(E).  2011 Pullo Decl. ¶ 13.

12.     The information withheld included terminal user ID information for the TECS system

which is generally assigned to a single person or system user and could be used to

identify the specific individual or employee accessing the record in the TECS system.

This information was withheld pursuant to Exemptions 2, 6, and 7(C).  2011 Pullo Decl.

¶ 15.

13.     The information withheld pursuant to Exemptions 2, 6, and 7(C) is purely internal

information that relates to personnel policies and practices.  2011 Pullo Decl. ¶ 15.

14.     Public access to the information withheld pursuant to Exemptions 2, 6, and 7(C) would

serve no genuine and significant public interest and would constitute a clearly

unwarranted invasion of personal privacy.  2011 Pullo Decl. ¶ 20.

15.     The record at issue, as part of TECS, is compiled for a law enforcement purpose.  2011

Pullo Decl. ¶ 25.

16.     The terminal user ID information withheld is contained in a record system compiled for a law enforcement purpose, and the privacy interest in the individual associated with that information clearly outweighs any minimal public interest in such information.  2011 Pullo Decl. ¶ 23.

17.     The information withheld pursuant to Exemption 7(E) consists of (1) information relating to the TECS system and operating programs, including  computer screen transaction codes, computer program transaction codes, and computer function codes (*e.g.*, "PF codes" or "navigation keys"); and (2) information contained in the system that reflects the results of specific law enforcement database queries (the "RSLT" column).  March 30, 2012 Pullo Decl. ("2012 Pullo Decl.") ¶ 10.

18.     The information withheld relating to computer screen transaction codes, computer program transaction codes, and computer function codes facilitates access to and navigation through TECS and reveals the mechanisms for access to and navigation through TECS.  2012 Pullo Decl. ¶ 11.

19.     The withheld computer screen transaction code and computer program transaction code consist of the master record code and page record code: data that show precisely how information is retrieved from the database.  2012 Pullo Decl. ¶ 11.

20.     Computer function codes reflect exact keys and keystrokes used for navigating TECS. 2012 Pullo Decl. ¶ 11.

21.     Detailed knowledge about the system and its intricacies could lead individuals to alter their behavior to mislead law enforcement and avoid detection.  2012 Pullo Decl. ¶ 11.

22.     The three types of codes withheld, which are inherent in a system compiled and used for law enforcement purposes, are withheld to prevent unauthorized access to information

which could result in alteration, loss, damage or destruction of data contained in CBP's computer system and lead to circumvention of the database and interfere with enforcement actions.  2012 Pullo Decl. ¶ 11.

23.   Release of the withheld code information could not only allow an individual knowledgeable in computer mainframes and systems to have unauthorized access (or hack) into the system, but also, once an unauthorized user has gained access to the system, knowledge of the withheld codes further facilitates the unauthorized user's ability to navigate through TECS.  2012 Pullo Decl. ¶ 12.

24.   Public disclosure of withheld codes would also arm unauthorized users with the ability to corrupt the integrity of data contained therein through the alteration/manipulation of such data, which could lead to loss of the ability to timely recognize, detect, and apprehend certain individuals or otherwise detect and enforce against violations or attempts to violate the law.  2012 Pullo Decl. ¶ 12.

25.   If the TECS system were to be hacked, knowledge of withheld computer codes could permit the intruder to potentially manipulate the way certain records are created and maintained.  2012 Pullo Decl. ¶ 12.

26.   Public disclosure of withheld computer codes could put at risk ongoing investigations and border security operations.  2012 Pullo Decl. ¶ 12.

27.   The withheld "RSLT" column information contains codes and information reflecting the use, application, and results of certain types of inspection, clearance, and authorization procedures as utilized at the time of an individual's entry or exit from the United States. 2012 Pullo Decl. ¶ 13.

28.     The withheld "RSLT" column information, if disclosed, could be used to develop countermeasures to circumvent CBP operations and its ability to enforce the laws of the United States.  2012 Pullo Decl. ¶ 13.

29.     The release of "RSLT" information could reveal the names of law enforcement databases that were queried at the time of arrival and the results of those queries.  2012 Pullo Decl. ¶ 13.

30.     Disclosing withheld "RSLT" information would reveal CBP targeting and inspection techniques used in the processing of international travelers, and would enable potential violators to design strategies to circumvent the examination procedures developed by CBP.  2012 Pullo Decl. ¶ 13.

31.     Individuals who knew the meaning of the codes contained in the "RSLT" column would gain access to CBP law enforcement techniques and procedures that would permit them to alter their patterns of conduct, adopt new methods of operation, relocate, change associations, and effectuate other countermeasures, thus corrupting the integrity of ongoing investigations.  2012 Pullo Decl. ¶ 13.

32.     Protecting and maintaining the integrity of TECS is imperative in assisting CBP to meet its mission to secure against terrorists, their weapons, and other dangerous items from entering the United States.  2012 Pullo Decl. ¶ 14.

33.     TECS is CBP's principal law enforcement and anti-terrorism database system, and it is one of the primary tools that CBP law enforcement officers, and other personnel with authorized access, regularly use, in order to effectively and efficiently enforce all applicable laws, particularly as it relates to travelers and trade crossing the border into or out of the United States.  2012 Pullo Decl. ¶ 14.

34.     As a fundamental law enforcement tool, there is a great need to defend TECS against any

threatened or real risk of threat or compromise, not only in order to ensure the

continuance of CBP's mission, but in order to assist the other law enforcement agencies

which TECS may support.  2012 Pullo Decl. ¶ 14.

35.     CBP conducted a line-by-line review of each record identified as responsive to Plaintiff's

FOIA request to identify information which is exempt from disclosure or for which a

discretionary waiver of exemption could be applied and to determine which records must

be produced in a redacted form.  2012 Pullo Decl. ¶ 15 & Ex. B.

36.     All information not exempted from disclosure pursuant to the FOIA exemptions specified

above was correctly segregated and non-exempt portions were released.  Information

withheld was individually determined to be exempt from release.  2012 Pullo Decl. ¶ 16

& Ex. B.

Dated: March 30, 2012                    Respectfully submitted,

                                         TONY WEST
                                         Assistant Attorney General

                                         RONALD C. MACHEN, JR.
                                         United States Attorney

                                         ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                         Deputy Branch Director

                                         _____*s/ Brigham J. Bowen*_____
                                         BRIGHAM J. BOWEN (D.C. Bar No. 981555)
                                         Civil Division, U.S. Department of Justice
                                         Federal Programs Branch
                                         P.O. Box 883, 20 Massachusetts Ave., N.W.
                                         Washington, D.C. 20044
                                         Ph.    (202) 514-6289
                                         Fax    (202) 616-8470
                                         brigham.bowen@usdoj.gov

*Counsel for Defendants*